THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. JAMES M. BLEVINS.

1. RAILWAY COMPANY—*Employés—Safe Tools.* As between a railway company and its employés, the railway company is required to exercise reasonable and ordinary diligence in furnishing to its employés reasonably safe tools with which to perform the work committed to them.

2. ——— *Negligence—Defective Tools.* As between the railway company and its employés, the company is negligent in furnishing to its employés defective and dangerous tools to work with, where it has notice of the defects, or could by the exercise of ordinary diligence have discovered such defects.

3. ——— *Evidence—Verdict.* The evidence examined, and *held* sufficient to sustain the findings and verdict.

*Error from Wilson District Court.*

ACTION to recover damages for bodily injuries. On May 12, 1888, judgment for plaintiff, *Blevins,* for $5,000 damages.

The defendant *Company* brings the case to this court. The opinion states the facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*S. S. Kirkpatrick,* for defendant in error.

Opinion by STRANG, C.: Action for damages. On the last day of November, 1886, the defendant in error, Blevins, a bridge carpenter, was working for the plaintiff in error on a bridge on its right-of-way over Fall river, in Wilson county, Kansas. It became necessary for some one to go up on the top of the structure to put certain timbers, called "corbels," in place. The defendant in error went up to assist in doing this work. It was necessary to drive the timbers to place, and one Murray, having charge of that immediate work for the plaintiff in error, handed Blevins a wooden maul with which to drive the corbels into position. Blevins received the maul, and striking the outside corbel on its side, drove it to its side position, and then turned to drive it endways to place. He struck the timber once on the end all right, but when he delivered the second blow he lost his balance and fell some 30 feet, seriously and dangerously injuring his spine and hip, from the effects of which he is still badly crippled, with no prospect of recovery. Blevins claims that he was thrown off his balance by the rebound of the maul he was using, and that the rebound was caused by the unsafe and dangerous condition of the maul furnished him by the company for the work he was at the time doing. He says that the maul had a cracked and crooked handle in it, and had become so badly worn and battered that it was uneven on the surface, which, when the blow was struck with it, caused it to glance and rebound in such a way as to jerk him over and off his balance, causing him to fall. This cause was three times tried in the district court, the first trial resulting in a verdict for $10,000 in favor of the plaintiff below, which was set aside by the trial court as excessive; at the second trial the jury disagreed; and the

last trial resulted in a verdict for the plaintiff for $5,000. The jury also returned a special verdict consisting of answers to a large number of questions submitted to them by the court on behalf of the defendant below. It moved for judgment for costs on the special verdict, notwithstanding the general verdict. Motion overruled. Motion for a new trial heard and overruled.

The first and most important question raised by the plaintiff in error is, whether the verdict is sustained by the evidence. That this is one of those cases into which the element of doubt largely enters, so far as the merits of the case are concerned, is evidenced by the fact that it was three times tried in the court below. The court in which the case was tried is presided over by a learned and careful judge; and the history of the trial in the court below shows that he did not hesitate, in the exercise of his authority, to protect the rights of the plaintiff in error when he thought they had been trampled upon by the jury trying the case. These things should count for something in favor of the judgment when this court is reviewing a close case like the present. The jury trying the case returned a general verdict, and also found specially the existence of certain facts, among which are the following:

"Was the man Murray also a foreman, under Carter, who had general supervision of the work? Ans. Yes.

"Did the plaintiff, pursuant to the directions of Carter and Murray, go upon the pier of defendant's bridge for the purpose of assisting in the adjustment of the corbel block? A. Yes.

"Did Murray, one of the defendant's foremen, while the plaintiff was standing upon the pier, procure and hand to him the maul referred to in the evidence for the purpose of adjusting this timber? A. Yes.

"Did the plaintiff, in obedience to the directions of Murray, proceed to strike the corbel blocks with the maul handed to him by Murray? A. Yes.

"Did the uneven face of this maul, when it came in contact with the end of the timber, bound to one side, and cause Blevins to lose his balance and fall from the bridge? A. Yes.

"Was the defendant in great haste for the completion of this bridge?  A.  Yes.

"Was the maul which caused the plaintiff to fall a defective and dangerous tool to work with?  A.  Yes.

"Did Blevins know of the uneven face of this maul and dangerous condition at the time that he used it?  A.  No.

"Did Carter, the foreman of the defendant, have notice of the defective and dangerous condition of this maul, or could the defendant, by the exercise of ordinary care, have discovered its dangerous condition?  A.  Yes.

"Was the work on the bridge where the plaintiff was employed being done about as usual on the day of the plaintiff's alleged injuries?  A.  No; they were hurried.

"Did the plaintiff use great care when he was using the maul, just before he fell?  A.  Yes.

"What acts of negligence, if any, was the defendant guilty of, causing plaintiff to fall?  A.  Neglecting to furnish suitable maul.

"What caused the plaintiff to fall?  A.  By defendant furnishing him with a defective tool.

"Could the plaintiff, by ordinary care, have discovered the condition of the maul and handle at the time he used it? A.  No.

"If you answer the above in the negative, state fully what prevented him from so discovering the condition of the maul. A.  Lack of time to consider."

The liability of the railroad company depends, first, upon the negligence of its agents; and, secondly, upon the absence of contributory negligence on the part of Blevins.  The negligence of the railroad company, if any, consists solely in furnishing Blevins with an unsafe tool with which to perform the work he was directed to do by the agent of the company, and in the performance of which he was engaged when he suffered the injury complained of.  Upon this question, the findings of the jury are very strong against the company. The twelfth question, submitted to the jury by the plaintiff below, and the answer thereto, are as follows:

"Did the uneven face of this maul, when it came in contact with the end of the timber, bound to one side and cause Blevins to lose his balance and fall from the bridge?  A. Yes."

While question 15 and answer read as follows:

"Was the maul which caused the plaintiff to fall a defective and dangerous tool to work with? A. Yes."

The answers to other questions show that Murray procured the maul, and gave it to Blevins to use in driving the corbels to place. They also show that Murray knew, or could have known by the exercise of ordinary care, of the dangerous condition of the maul. It necessarily follows, then, that if these findings are supported by evidence, the railroad company was guilty of negligence. The plaintiff testified as follows in relation to his fall:

"After you got it adjusted, you struck it upon the end? A. Where, I don't recollect; it seems to me there was one or two licks; I wouldn't be positive as to that, that I struck upon the end; I don't know whether it was one or two; I can't call to mind now. It was not over two licks, I am satisfied.

"Q. What was the result of the strike? A. Well, the maul rebounded when I struck and jerked me. I was standing with my face in this direction, and the maul rolled with me to the right and jerked me off. I fell down in there somewhere upon the breakwater."

Dick Yaney, a witness for the plaintiff below, testified as follows:

"He stepped round and turned as though he was going to hit it, and upon that he made a second lick. The maul bounced and rolled, bounced in his hands and throwed him off his balance head foremost down.

"Q. Which way did the maul spring when it rolled? A. To the right.

"Q. He struck it, and the second lick he struck the maul swung to the right? A. Yes, sir.

"Q. And threw him off? A. Yes, sir."

It would seem as though this, and other evidence like it in the record, was sufficient to support the finding that the maul, in the condition it was in at the time it was given Blevins for use by him in driving the corbels to place, was an unsafe tool to use, especially in the dangerous position in which he was required to use it, and that the company was guilty of negli-

gence in handing it to Blevins to be used by him in the position occupied by him at the time.

Was the plaintiff below guilty of contributory negligence? Upon this branch of the case the findings of the jury, or a part of them, are as follows:

"Did Blevins know of the uneven face of this maul and dangerous condition at the time he used it? A. No.

"Was the defendant not in great haste for the completion of this bridge? A. Yes.

"Was the work on the bridge being done about as usual on the day of the plaintiff's alleged injuries? A. No, they were hurried.

"Did the plaintiff use great care when he was using the maul just before he fell? A. Yes.

"Could the plaintiff by ordinary care have discovered the condition of the maul and handle at the time he used it? A. No.

"If you answer the above in the negative, state fully what prevented him from so discovering the condition of the maul. A. Lack of time to consider."

These findings clearly exonerate Blevins from any contributory negligence. Are they justified under the evidence? There is no evidence showing that Blevins was, in fact, careless or negligent. He himself testified as follows upon this question:

"Q. In using that maul and driving the timbers, what degree of care did you use? A. I used all the care that I could. I did not want to be crippled."

Blevins also testified that he had never seen the maul before it was handed him to use at the time he fell, except as it lay on the dump 15 to 20 feet away; that he did not inspect it when handed to him; noticed the edges of the maul were battered some, but did not see the face of the maul, and did not know it was uneven. He says the work that morning was under more of a rush than usual, because Mr. Carter, the bridge boss, wanted to get to raise the timbers; that he was hurried, and did not stop to inspect the face of the maul.

The law requires employés to use ordinary care to discover whether or not the tools furnished them by the master are

such as can be used with safety, especially when the defects are obvious. But whether an employé has used ordinary care or not in a given case must be determined after an examination of the surrounding circumstances and conditions at the time its exercise is required. What will be held sufficient care under some circumstances will not under others. So, in this case, while there does not seem to have been a great degree of care exercised by Blevins, yet, when we consider that the maul was handed him by the representative of the railroad company, which gave him a right to suppose it was safe; that he was in a high and dangerous position, which limited his opportunities for the inspection of the maul; and that the work at the time was being rushed, so that he was hurried and his opportunity for inspection of the maul thus interfered with, we do not care to say he did not exercise ordinary care under the circumstances.

' The plaintiff in error complains of the latter part of the third general instruction given to the jury. We have examined this instruction, and, taken as a whole, we do not think it is erroneous. It is therefore recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.