HENRY VANT HUL v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 23, 1903.

Nos. 13,605—(60).

**Defective Appliance—Flogging Hammer.**
   A flogging hammer, used in a machine shop for striking chisels and similar instruments, when manufactured and furnished by the master, is an implement, within the rule requiring the master to furnish tools and appliances reasonably safe for the purpose used.

**Question for Jury.**
   It was not error to submit to the jury the question whether, under all the circumstances, the workman receiving the injury ought to have known that the hammer was defective, and ought to have appreciated the danger, and that, where inspection was made by the master, the foreman had a right to presume the instrument was reasonably safe for the purpose, and that the jury might take into account the workman's age and experience, in determining whether he ought to have known or discovered the defects.

**Expert Testimony.**
   The condition of the hammer, and the question of its suitability for the purpose, were not proper subjects for expert testimony.

**Verdict.**
   The verdict was not excessive.

Action in the district court for Ramsey county to recover $30,000 for personal injuries. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $14,400. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

   *M. L. Countryman,* for appellant.
   *Sheehan & Keefe,* for respondent.

LEWIS, J.

   Henry Vant Hul, a young man of eighteen years, was in the employ of appellant company as an apprentice in its boiler shops. Having been directed by the foreman in charge of the shops to go to work rounding

[1]Reported in 96 N. W. 789.

up flues in the boiler of a certain engine, he did so, using a flogging hammer and steel pin; and while so engaged a small piece of steel broke off the face of the hammer when he struck the pin, and flew into respondent's left eye, destroying its sight, and seriously injuring the power of vision of the right eye. This action was commenced to recover damages, based upon the ground that appellant had been negligent in failing to properly inspect the hammer, and in furnishing respondent with a defective tool.

The trial court submitted the issues to the jury, by stating that it was admitted respondent was directed by the foreman to do the work, and that he was injured by a piece of steel flying from the hammer furnished him, and instructed the jury that it was the duty of the master to furnish tools reasonably safe for the purposes used; submitting to it the question whether in this instance the master had complied with this requirement. This part of the charge embodied the direction that the jury should take into consideration the condition of the hammer, and, from all the evidence, determine whether it was in a dangerous condition—whether its defects, if any, were of such character that a piece of steel might fly from it when used with ordinary care, or whether it was reasonably safe for use.

The court further charged the jury that if, from the evidence, they found that the inspector of tools gave respondent the hammer, then they should, from a consideration of all the circumstances, determine whether respondent ought to have known that the hammer was defective, and ought to have appreciated the danger. The jury were also instructed that, if they found the tool inspector furnished respondent the hammer, they should take into account that circumstance, in deciding whether respondent was excused from not discovering or knowing its defects; that where the master employs an agent or inspector to care for and inspect its tools, and an employee is given a tool by such inspector, the employee has a right to presume it to be in proper condition—reasonably safe for use.

The court further charged the jury that respondent was not entitled to any consideration by reason of his minority; that he was old enough to be considered a man of ordinary intelligence and capacity; but that they might take into consideration his experience at such work—his experience in boiler shops, with flogging hammers, or other hammers

used around machinery—in determining whether he ought to have known or discovered the defects in the hammer at the time he was using it. The assignments of error challenge the correctness of these instructions.

Appellant offered expert testimony to the effect that the hammer used by respondent at the time of his injury was not dangerous or improper for such purpose, and that it was safe and a proper tool. Error is assigned upon refusal of the court to permit the following question:

> "I will ask you whether or not hammers in the condition that the hammer which the plaintiff used on that day—hammers with checks on the face—were in general use around the boiler repair shops at the time the plaintiff was hurt, and during the time he was employed there?"

A verdict of $14,400 was returned for respondent, and appellant appealed from an order denying a motion for judgment notwithstanding the verdict or for a new trial.

1. Was the flogging hammer a tool of that class of instruments within the general rule which requires the master to furnish the employee tools and instruments which are reasonably safe for the uses to which they are to be put, and does it conclusively appear from the evidence that respondent assumed the risk of using the hammer in its defective condition?

2. Should expert testimony have been received to the effect that the hammer was a safe and proper tool?

3. Was it error to exclude evidence offered to show that other hammers than the one used by respondent were in a similar condition and in general use around the boiler shops?

4. Was the verdict excessive?

1. In the case of Hefferen v. Northern Pacific Ry. Co., 45 Minn. 471, 48 N. W. 1, 526, the plaintiff was injured by a sliver of steel which flew from a tool called a "side-set." It was there held that defendant was not liable for the condition of the tool, upon the ground that it did not inspect, and provide a tool repairer, whose duty it was to furnish tools to the men, but, on the contrary, it was the custom for the men to take the tools to the repairer when necessary, and to select others from those furnished at different places in the shop. It was

there stated that it was not the duty of the master, under ordinary circumstances, to see to it that tools which became obviously unfit for use were removed beyond their reach, and that other tools were furnished to take the place of those getting out of repair, and it was plaintiff's duty to lay aside the defective side-set when it became dangerous and select a proper one.

In Morris v. Eastern Ry. Co., 88 Minn. 112, 92 N. W. 535, the complaint was sustained on demurrer, and the charge of negligence was that defendant manufactured and delivered to plaintiff a flogging hammer which was defective, in that the face of it contained several flaws or holes; that, in using the hammer upon a side-set, a sliver of steel was detached from one of the holes or flaws, causing the injury, and it was alleged that these defects were not apparent, and their danger was not appreciated by the plaintiff by the exercise of ordinary care. In the decision the case was distinguished from Hefferen v. Northern Pacific Ry. Co., supra, as follows: In the former, the condition of the instrument was apparent, and did not arise from a defect in its manufacture, whereas in the Morris case the defect arose in the manufacture of the tool; and the distinction was also pointed out that in the one case it was the duty of the workman to select the tool with which to do the work, while in the latter the allegation of the complaint was that the hammer manufactured was furnished to plaintiff for the purpose of doing the work specified.

In the case before us, the hammer in question was manufactured by appellant. Such hammers were made from bars of steel, and it required experience and great skill to properly temper them, and very few will stand continual use without, in the course of time, showing cracks or checks upon their surface and edges, which appear sooner or later, according to the temper of the steel and the manner and length of time of use, and that, as a result of such checks and cracks, there comes a time in the life of such hammers when they are liable to break, and must be set aside as useless.

The evidence was conflicting upon the question whether or not appellant inspected the tools, and furnished the hammer in question to respondent. The jury found contrary to the claim of appellant, and found that such inspection was made, and that the hammer was delivered to respondent. This fact alone distinguishes the case from

Hefferen v. Northern Pacific Ry. Co., supra.    According to the decision of the jury, the company not only manufactured the hammers, but kept them in a room fenced off for that purpose, and provided a tool inspector, whose duty it was, upon application from the workmen, to hand out tools for the given purpose.    When we consider the skill required in the manufacture of such hammers, and the fact that there arrives a point in the course of their use when their vitality is destroyed and they are liable to check and break, a condition is presented which takes them out of the class known as common tools, whose condition is as easily discernible by a workman as an inspector.    It is desirable that an inspector be furnished, whose duty it is to pass upon the safety of such instruments; and, according to the evidence, the company recognized the desirability of inspection, and provided for it.    It is evident from the nature of the checks and cracks, as appears from the evidence, that a hammer might be in an unsafe condition, and yet the danger of using it not be apparent to an inexperienced and unskilled workman.    It is true that a workman of long experience, accustomed to use such hammers, and who had become familiar with the fact that they would crack in the course of time, might be as competent to judge of their safety as would an inspector furnished by the company for that purpose; but if the company established the system of collecting its tools and hammers under the charge of a custodian, whose duty it was to inspect and furnish them to the workmen as required, such practice would tend to cause the workmen to become less vigilant in their inspection of the tools than if the practice was to permit them to use their own judgment in selection.

In this case respondent was an apprentice, eighteen years of age, with very limited experience; and it was for the jury to say whether he assumed the risk of using the hammer in the condition in which it was, and it was proper for the court to instruct the jury that in determining that question they might take into account his experience as a workman. Although the checks and cracks upon the face of the hammer were observable, he was not necessarily in a position fully to appreciate the danger arising from its use.    His experience being of a limited character, it was a question for the jury to say how much he was entitled to rely upon the inspection provided by the company, and whether he assumed the risk of using it.

2. The expert testimony was properly excluded. It was for the jury to find, under all the circumstances, whether the tool was a proper one, and, if not, whether the respondent assumed the risk of using it.

3. It was not error to exclude the testimony with reference to the condition of other hammers around the shop. There may have been other hammers which at different times had similar marks or defects, but that fact could have no bearing upon the case, unless for the purpose of showing that respondent was familiar with such defects, and that he knew the condition of the hammer in question when he received it, and assumed the risk of using it, but the evidence excluded did not go to that extent.

4. The young man lost the entire vision of one eye, and, according to the testimony, the other eye was impaired to the extent of about nine-tenths, with a strong probability that the sight would ultimately be entirely lost. Under these conditions, it cannot be said that the verdict is excessive.

Order affirmed.