## WILLIAMS *v.* GARBUTT LUMBER COMPANY.

1. In a suit by a servant against a master for a personal injury resulting from a log, which was being loaded on a tram-car, slipping and rolling against him, the petition alleged in substance as follows: The injury resulted from the condition of a cant-hook which was being used by a fellow-servant, and which was so worn at the point of the hook and at the place where it joined the handle that it would not hold the log. Plaintiff was without fault, and he was not injured by any negligence of his fellow-servant, but by reason of negligence of the master in furnishing a defective and unsafe cant-hook to the fellow-servant of plaintiff, and in not inspecting it. The plaintiff and his fellow-servant were principally engaged in cutting logs, and were called to assist in loading only when necessary. The cant-hooks were all carried on the log-train and kept there or at the mill, at a distance of several miles from the place where the plaintiff and his fellow-servant were cutting logs. They were engaged in a different department of the work from that to which was entrusted the furnishing and taking care of cant-hooks. The defect could only be discovered by inspection. The hook was not regularly used by or kept in the custody of the fellow-servant. Neither the plaintiff nor the fellow-servant knew of the defective condition of the tool, and they had no opportunity to know of it, as they would be called to where the cant-hooks were, and would take any hook accessible, and immediately proceed to loading logs, having neither time nor opportunity for inspection. The fellow-servant was only sixteen years of age, and had not reached such years of discretion as to be trusted with such a tool, unless it had been inspected or he had been warned of the danger. The master knew, or by the exercise of ordinary care ought to have known, of the unsafe condition of the tool. *Held,* that the petition was not subject to general demurrer.
2. The other grounds of the demurrer did not authorize the dismissal of the case.

Argued July 24, 1908.—Decided February 26, 1909.

Action for damages. Before Judge Whipple. Ben Hill superior court. October 21, 1907.

S. P. Williams brought suit against the Garbutt Lumber Company, alleging in substance as follows: On March 23, 1906, the

plaintiff was in the employment of the defendant, his duties being
to cut logs which were to be used at the sawmill of defendant, and
which it was customary to transport by hauling them to the de-
fendant company's tramroad and loading them on trucks which
were drawn by a steam-engine. The loading of the logs would
sometimes require the work of more men than were engaged on
the cars or trucks, and it was a part of the plaintiff's duties, when-
ever called upon to do so, to leave his business of sawing logs and
assist in loading them for transportation. He was subject to the
orders of the woodman of the defendant in this respect. The
usual method employed for getting the logs on the trucks was this:
The logs would be hauled up and placed upon skids, and, when
ready to be loaded upon trucks, laborers would slide or push the
logs along these skids on what were called "jumpers," which were
other logs or timbers running from the skids in an inclined di-
rection upward to about the level of the top of the trucks. A long
chain would be put around the logs, and mules would be hitched
to it, and by driving the mules forward the logs would be pulled
up the inclined plane and carried upon the trucks of the logging-
train. While they were thus being loaded, it was necessary that
the logs should be handled by laborers using "cant-hooks" for the
purpose of turning them or moving them, holding them in proper
position, and otherwise working with them to get them upon the
trucks. On the date named the plaintiff and other laborers were
called to assist in loading logs in the manner mentioned. They
proceeded to do the loading in the usual way. Nick Williams,
who was a laborer of the same kind as the plaintiff and engaged in
the same work, was assisting in carrying the logs up the "jumpers"
in the manner described. Plaintiff, having aided him in getting
the logs started up the "jumpers" toward the trucks, turned for
the purpose of starting the next log, as was necessary and proper
to be done, in order to load the logs quickly, as it was their duty
to do. Nick Williams placed the cant-hook which he had under
one end of the log which was then on its way up the "jumpers,"
for the purpose of keeping it from slipping back. This was the
proper way to do in carrying out that work. The cant-hook which
Nick Williams was using was defective, the wooden part of it
being so badly worn that the metal hook would not hold properly.
By reason of such defective condition, the pressure of the log upon

the cant-hook caused it to slip out of place and fail to hold the log as it should have done and would have done save for the defect. This caused the log to slip or roll down the "jumper" near which the plaintiff was standing, engaged in his duty of bringing forward the next log. The log thus sliding or rolling struck the plaintiff on the leg, breaking it and causing a serious injury (which was described). It was the duty of the defendant to furnish to its laborers safe tools and appliances for their work, and it was negligent in furnishing a defective cant-hook for that purpose. This duty rested upon the defendant corporation, and the failure to discharge it was not due to any fault on the part of the plaintiff or any fellow-servant. Plaintiff was not negligent, but used all reasonable care and diligence in the performance of his duty, and the injury was not due to the negligence of any fellow-servant.

By amendment it was alleged, in substance, as follows: The cant-hook used by Nick Williams had become, from long use, somewhat worn at the point, and was not sharp enough to catch and hold the log upon which it was being used. The defects in it, as set out here and in the original petition, were not perceptible unless closely examined, and, it being kept in the custody of the Garbutt Lumber Company, and not being regularly used or kept by Nick Williams, he had no occasion to inspect or examine it carefully. In fact he did not do so, but took it and proceeded immediately to use it, relying upon it, thus furnished to him, as being in proper and safe condition for the work to be done. At the time of the injury to the plaintiff, Nick Williams was a boy about sixteen years of age, and while physically able to perform the portion of the work expected of him, he had not reached the age of discretion and judgment at which it was proper to entrust him with the use of such a tool as a cant-hook, unless it was carefully examined and inspected by the Garbutt Lumber Company, or its agent employed for that purpose, to see that the cant-hook was a safe one for the work to be done with it; or unless the attention of Nick Williams was specially called to the danger of handling and using a cant-hook that might not be in a perfect condition. The cant-hooks used by the laborers were all carried on the logging-train of the defendant and were kept there or at the mill, at a distance of several miles from the point where the

plaintiff and Nick Williams were engaged in cutting logs. Nick Williams and the plaintiff were engaged in an entirely different department of work from that to which was entrusted the furnishing and taking care of the cant-hooks. Nick Williams did not know of the defective condition of the cant-hook used by him, nor did the plaintiff. When it became necessary to load the logging-train, the plaintiff, Nick Williams, and other laborers would leave their axes with which they were cutting logs and go to the logging-train, where each laborer would take for his use any cant-hook accessible, no particular one being assigned to any laborer. Immediately upon taking up the cant-hooks the plaintiff and other laborers would load the logs as they did on this occasion. Therefore they had no time or opportunity to inspect the cant-hooks. Neither the plaintiff nor Nick Williams had a reasonable opportunity to know of the unsafe condition of the cant-hook; but the Garbutt Lumber Company did have knowledge of its unsafe condition, or ought to have had by the exercise of ordinary diligence.

The defendant demurred to the petition as amended. The court sustained the demurrer, and the plaintiff excepted.

*Haygood & Cutts,* for plaintiff. *Hal Lawson,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) The general rule requires a master to use ordinary diligence to furnish the servant with appliances reasonably suited to the use for which they are intended, and to use like diligence in inspecting and keeping them in proper condition for use. To this general rule some courts of other States have declared that there exists what has been denominated an exception as to "simple tools." The basis on which this has been placed by some of the courts is that where a tool or instrumentality is so entirely simple in its nature and character that its condition can be seen at a glance, or that one who uses it has as good an opportunity as the master for knowing its condition, the servant can not recover on the ground that the master did not inspect it. In some of the decisions there is a broad announcement that the master is under no duty to inspect such simple tools. It will be found, however, that in most of the cases where this rule or exception was applied the controversy was between the master and the servant to whom he furnished the tool, and where the defect and danger were so apparent that the servant was guilty of negligence in using the tool, or where he

knew of its condition, or had equal opportunity with the master for knowing it. The apparent hardship of holding the master to a high degree of diligence relatively to his servant in regard to inspecting very simple things, the condition of which must be patent to the person using them, appears also to have had weight in some instances. Thus, in the case of Martin v. Highland Park Mfg. Co., 128 N. C. 264 (38 S. E. 876, 83 Am. St. R. 671), where an injury occurred from a fragment of steel which flew off from a hammer that was being used to drive a new key into a shaft, it was said: "Well, then, if defendant furnished its employees with tools known to it to be defective, or by ordinary care and inspection could have known of such defects, and the injury · was caused by reason of such defects, then there would have been evidence of negligence to be submitted to the jury. But was there any apparent defect in the hammer? Or was there a defect known to the defendant or its agent? Or was the hammer used in a negligent, careless, and unworkmanlike manner? If such state of facts existed, the plaintiff failed to offer any evidence to prove it." And after referring to whether the hammer was properly tempered or not, it was added, "Surely, it can not be seriously contended that every employer is responsible for injuries occurring from improperly tempered axes, hoes, scythes, trace-chains, lap-links, bridle-bits, etc., the imperfections of which could not be known till used; or for defective whiffie-trees, ax-helves, hoe-helves, hand-spikes, plow-lines, and such like (the defects of which would be first discovered by the party using them), unless the employer is shown to have had knowledge of such defects. If such be the rules of law, then the contentment of the farmer must give place to anxiety and dread lest injury, resulting to a servant from a splintered hoe-helve or hand-spike, defective bridle-bit, whiffie-tree, or plow-line, et id simile, may at any time occur, and sweep from him his farm and belongings in compensation of the damage done. To the same experience would the contractor expect to be subjected should a defective nail, while being driven by one of his carpenters, break and do injury. To which doctrine we can not subscribe." It was accordingly held that the mere occurrence of the injury was not sufficient to raise a presumption of negligence, it being stated that "In the case at bar there was no evidence that any defect in the hammer was known to exist either by the plain-

tiff or defendant, nor is there any evidence to show that its condi-
tion was such as to incite an inquiry or suspicion."

The Supreme Court of Wisconsin, in Stork v. Stopler Cooperage
Co., 127 Wis. 318 (106 N. W. 841), discussed the basis of what is
called the "simple tool" exception, as follows: "It may be con-
ceded that, generally speaking, a monkey-wrench is in such cate-
gory; and the rule of law is well established in this State and else-
where that in case of such simple tools no liability rests on the
master for the ordinary perils resulting from their use, nor for
those latent and usual defects or weaknesses which, by reason of
the common, usual character of the appliances, are presumed to be
known to all men alike. This exemption from liability is, we be-
lieve, in all cases based upon the condition that the defect and
peril are such that no superiority of knowledge in the master over
the employee exists or can be presumed. [Citing authorities.]
Another qualification of the master's liability, indulged in case
of such simple tools and appliances, is exemption from a duty to
inspect to ascertain the development of defects or disrepair in the
course of their use, based also upon the assumption that such con-
ditions are as much within the observation of the employees as of
the master, if not more so. [Citing authorities.] While these rules
result practically in a relaxation of the master's duty and liability
in the case of such simple tools, they are not at all in denial of
the general underlying principle of the law of negligence that one
who knowingly exposes another, to a likelihood of injury is liable
therefor, in the absence of consent by such other or of contributory
negligence. As stated above, the relaxation of the master's duty
and liability rests on the assumed equality of knowledge and ability
to discover the defect complained of. It can have no application
to a defect of which the master is actually cognizant, and which,
as a reasonable man, he should appreciate is likely to result in
injury to one using the implement as it is likely to be used, and
which is neither known to the employee nor of such a character as
to be obvious to that observation which may be expected to accom-
pany its use."

In a note to Vanderpool v. Partridge, 13 L. R. A. (N. S.) 668
(79 Neb. 365, 112 N. W. 318), is collected a number of cases on
the subject. The annotator makes the following general observa-
tion: "The rule of respondeat superior rests upon the assumption

that the employer has a better and more comprehensive knowledge than the employee, and therefore ceases to be applicable where the employee's means of knowledge of the danger to be incurred is equal to that of the employer. Such is the case where the instrument or tool, the defect in which is the cause of the injury, is of so simple a character that a person accustomed to its use can not fail to appreciate the risks incident thereto. The mere simplicity of a tool, as is apparent upon consideration of the basis above stated of the rule of respondeat superior, will not exempt the master from all care, or relieve him from liability under all circumstances; but the capacity, intelligence, and experience of the servant, the character of the defects, his opportunity for detecting them, his situation and the circumstances calculated to withdraw his attention from them, as well as the fact that the servant has a right to rely upon the master to protect him from danger and injury, and in selecting the agent from which it may arise, are factors of varying importance, which must also be taken into account. The manner in which they operate will be further considered in connection with the various instrumentalities involved." And see 1 Labatt on Master & Serv. §154.

In Chicago, Kansas & Western Ry. Co. v. Blevins, 46 Kans. 370 (26 Pac. 687), an employee of a railway company, who was working on a bridge, was thrown off his balance and injured by the fall. He claimed that this was caused by the rebound of a maul which he was using, and that this resulted from the unsafe and dangerous condition of the tool furnished him by the company, in that it had a cracked and crooked handle, and had become so badly worn and battered that it was uneven on the surface, which caused it to glance and rebound in such a way as to jerk him over and off his balance. The jury found in favor of the plaintiff. The case was carried to the Supreme Court, where the judgment was affirmed. That court held that the question of liability of the company depended upon whether its agents were negligent in furnishing an unsafe tool to the employee and whether he was guilty of contributory negligence, and that what might be held ordinary care on the part of an employee under some circumstances might not be sufficient under others. It was said: "So, in this case, while there does not seem to have been a great degree of care exercised by Blevins (the plaintiff), yet, when we

consider that the maul was handed him by the representative of the railroad company, which gave him a right to suppose it was safe; that he was in a high and dangerous position, which limited his opportunities for the inspection of the maul; and that the work at the time was being rushed, so that he was hurried and his opportunity for inspection of the maul thus interfered with, we do not care to say he did not exercise ordinary care under the circumstances." It would seem that an ordinary maul was a simple kind of tool, and that its battered condition could be easily seen, but the circumstances under which it was furnished and the situation and surroundings were such as to leave the question of the diligence or negligence of the respective parties to be determined by the jury. What ordinary care requires a master to do in reference to a tool or instrumentality may be affected by the character of such tool or instrument; and so the simplicity of a tool and the obviousness of its condition may affect the servant in his use of it, and bear upon the question of diligence or negligence on his part. But the master is bound to use ordinary care; and if, under the circumstances of the particular case, it appears that he has not done so, he will not be freed from liability, if the other elements necessary to a recovery by the servant exist. In most of the cases involving the matter of the simplicity of the tool used, the question arose, under the evidence, as to whether the facts were such as to show a want of diligence on the part of the master, or negligence on the part of the servant, or equal opportunity for knowledge on the part of both. In a smaller number the sufficiency of the pleading was involved. In nearly all of the adjudications where the simple-tool idea was considered, the question arose between the master and the servant to whom he furnished the tool for use, and not between the master and another servant who was injured by the breaking of the tool or its defective condition, while being handled by the servant to whom it was furnished. In a few cases another servant was injured. The difference between the two does not seem to have been very carefully considered or discussed, but among the adjudicated cases bearing on that subject there is conflict. In Michigan no distinction appears to have been made between the servant who used the tool and a fellow-servant, where both were working together in making holes through a section of boiler

iron. Rawley v. Colliau, 90 Mich. 31 (51 N. W. 350). And in a Minnesota case the injured employee was at work with another in cutting bolts from a rod of iron, and a piece of steel flew from the hammer in the hands of the other employee, causing the injury. Koschman v. Ash, 98 Minn. 312 (108 N. W. 514, 116 Am. St. R. 373). On the other hand, in Campbell v. Gillespie Co., 69 N. J. L. 279 (55 Atl. 276), it was declared, that, "When the defect in the tool taken by the servant is obvious, the servant who takes it, although it is the only one on the premises, assumes the obvious risk of danger to himself, but he can not assume an obvious risk in such case for a fellow-servant who does not know of the danger." The case is cited, however, by the same court in a later decision where a somewhat broad view was announced. Demato v. Hudson Co. Gas. Co. (N. J.), 67 Atl. 28. But there the employee injured was the same one who used the tool. In Louisville & N. R. Co. v. Roberts (Ky. 1902), 70 S. W. 833, it was said: "In this case it was not shown that it was appellee's duty to handle the implement found by the jury to have been defective; that is, the spike maul. Therefore the question of his opportunity to know its condition does not appear to have been relevant in this cause, because, at the outset, his opportunity for knowing would not be carried further than an examination of those tools with which he himself was required to work." In De La Vergne Ref. Mach. Co. v. Stahl, 24 Tex. Civ. App. 471 (60 S. W. 319), in an action by an employee for an injury caused by a piece of steel flying off from a rivet hammer, the defendant requested the court to charge that as it was shown that such hammers were of the best make, and as it was agreed that they had to be highly tempered, and were on that account necessarily to some degree brittle and liable to chip off, the plaintiff had assumed the risk of being injured by such chipping off. The evidence showed that the hammer had become cracked from use, and was more liable in that condition to chip off than when new. It was held that there was no error in refusing the request. "Nor was it error, under such state of facts, for the charge to submit the question as to whether or not defendant had used ordinary care in furnishing safe rivet hammers for the purpose for which they were being used. Where plaintiff's part of the work was merely to hold the rivet hammer

while it was being used by another employee, and he had been engaged at such work only a few days, and there was testimony that he knew nothing about the condition of the hammer, it was for the jury to determine whether he knew, or was negligent in not knowing, the danger, although the cracked condition of the hammer was apparent on a casual examination."

While in a number of cases, in dealing with the particular facts involved, it has been held that the tool then being used (such as a stick with which to push cars, an ordinary hammer, or the like) was so simple in its character that the servant had at least equal opportunity with the master for observing it, and that he was at fault for not doing so, or that the master could not be charged with negligence as a matter of law for not inspecting it, and that therefore in such cases there could be no recovery, no arbitrary and invariable rule can be laid down by which it can be declared that a master is relieved from the duty of inspecting certain specified tools, regardless of the circumstances of the case. Nor can a court well undertake to make a catalogue of tools by name, and say that as to injuries caused by them there shall be an arbitrary exemption from liability on the part of the master. At last the duty of the master must necessarily to some extent depend, not merely upon the name of the tool, but also the circumstances under which it is furnished or kept for use, and under which it is used. The underlying principle, rather than the name of the tool, is the important matter. An illustration of this may be seen in the fact that a hammer has sometimes been referred to as falling within the simple-tool exception, and yet a "flogging hammer," which is a small sledge-hammer used for striking a large cold chisel, in chipping castings, was differentiated from it. See Vant Hul *v.* Great Northern Ry. Co., 90 Minn. 329 (96 N. W. 789); Morris *v.* Eastern Ry. Co., 88 Minn. 112 (92 N. W. 535); Koschman *v.* Ash, 98 Minn. 312, supra. In the Koschman case the Vant Hul case was also distinguished from that then under consideration, because "the defendant not only manufactured the hammers, but kept them in a room fenced off for the purpose, and provided a tool inspector whose duty it was, on the application of the workman, to hand out the tool for the particular purpose." In the Morris case, too, it was alleged that there was a defect in the making of the tool, the defendant being also

the manufacturer. In *Banks* v. *Schofield's Sons Co.*, 126 *Ga.* 667 (55 S. E. 939), a piece of steel flew from the end of a chisel which an employee was using in dressing or chipping the iron on the truck frame of an engine. It was held, that, under the facts as set out in the plaintiff's petition, the servant was not entitled to recover from the master damages on account of the injury so caused. The law in reference to the duty of a master in furnishing machinery to his servant, and the duty of the servant in regard thereto, as codified (Civil Code, §§2611, 2612), and the declaration there made, that, in a suit by a servant against the master for an injury arising from a defect in a machine, "it must appear that the master knew or ought to have known . . of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof," were treated as applicable in principle to the case then under consideration. It was said that "The plaintiff's petition is fatally defective in three particulars. It fails to show that he did not know of the condition of the chisel before he was injured by its use; it shows that his means of knowing its condition were as good as those of the defendant; and it is apparent that by the use of ordinary care he could have known its condition." In this State, also, the character of the duties performed, whether the non-assignable duties of the master or not, has been adopted as the test of whether one is a fellow-servant of an injured employee, rather than the grade of ranks of the servants respectively. *Moore* v. *Dublin Cotton Mills*, 127 *Ga.* 610 (56 S. E. 839, 10 L. R. A. (N. S.) 772).

We do not find it necessary in this State to adopt any arbitrary rule as to tools bearing certain names, or described somewhat indefinitely as "simple tools." If what is called the "simple-tool rule" is based on the principle of equality or superiority of opportunity for knowledge on the part of a servant, that principle forms a part of the test applied by our Civil Code (§§2611, 2612) in a suit against a master by a servant for an injury claimed to have arisen from the negligence of the master in failing to comply with the duties imposed on him in regard to machinery, and which, as already seen, has been held to apply in principle to cases arising from defective tools. The application of the rule that it

must appear that the master knew or ought to have known of the defect or danger, and that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof, to the facts of the particular case under investigation will furnish a solution of the question of liability or non-liability. In the determination of each case, the nature, character, and simplicity or complexity of the tool is, of course, an important factor for consideration. The case may be so plain, on the pleadings or evidence, that but one conclusion can legitimately be drawn, as in decisions of this court cited below; or it may be of such a character as, under the facts disclosed, requires submission to the jury.

We do not in what is here said conflict with former rulings of this court as to what a petition must allege in a suit by an injured servant against a master; nor with those rulings where, under the evidence, considering the nature of the tool as well as the circumstances of the case, it was held that no negligence on the part of the master was shown, or that there was a want of ordinary care on the part of the servant, or that there was knowledge or equal opportunity for knowledge by the servant and assumption of risk by him, and that there could be no recovery. See *Lee* v. *Atlantic Coast Line R. Co.,* 125 *Ga.* 656 (54 S. E. 678); *East Tenn. etc. Ry. Co.* v. *Perkins,* 88 *Ga.* 1 (13 S. E. 952); *Stewart* v. *Seaboard Air-Line Ry.,* 115 *Ga.* 624 (41 S. E. 981); *Moseley* v. *Schofield's Sons Co.,* 123 *Ga.* 197, 200 (51 S. E. 309), and similar cases. But the reason for each decision is the application of the underlying principles of the law governing the relation of master and servant to the facts as shown by the pleadings or evidence in the case before the court, rather than any arbitrary rulings as to a particular instrumentality bearing a given name. Nor is there anything contrary to this ruling in the decision in *Georgia Railroad and Banking Co.* v. *Nelms,* 83 *Ga.* 70 (9 S. E. 1049, 20 Am. St. R. 308), where it was held that a hammer used by a track hand on a railroad was not a part of the "machinery" of the railroad company, within the meaning of the statute which declares that such a company shall be liable for any damage done to persons, stock, or other property "by the running of the locomotives or cars or other machinery" thereof.

In the case now before us it was alleged, that the plaintiff and

his fellow-servant, Nick Williams, were employed by the lumber company to cut and saw logs which were to be used at the sawmill of the company; that it was customary to transport the logs by loading them on trucks drawn by a steam-engine over a tramroad; that the log cutters were sometimes required to leave their principal work and assist in loading the trucks; that the cant-hooks used in loading were not regularly kept by them, but were kept in the custody of the company, being all carried on the log-train and kept there, or at the mill, a distance of several miles from the point where the plaintiff and Nick Williams were engaged in cutting logs; that they were employed in an entirely different department of the work from that to which was entrusted the furnishing and taking care of the cant-hooks; that when it was necessary, in loading the logging-train, the plaintiff, Nick Williams, and other laborers would leave their axes and go to the train, where each laborer would take for his use any cant-hook accessible, no particular one being assigned to any laborer; that immediately upon doing so they would load the logs as they did on this occasion; that they had neither time nor opportunity to inspect the hooks, and that neither the plaintiff nor Nick Williams knew of the defective condition of the hook used by the latter, or had any reasonable opportunity to know of its condition, which was not perceptible unless closely examined, but the lumber company did have knowledge thereof, or ought to have had it by the exercise of ordinary diligence; that Nick Williams did not keep or regularly use this cant-hook, and had no occasion to inspect or examine it carefully, and did not do so, but took it and proceeded to use it, relying upon its being in proper and safe condition for the work to be done; that Nick Williams was a boy about sixteen years of age, and, while physically able to perform the work expected of him, he had not reached the age of discretion and judgment at which it was proper to entrust him with the use of such a tool, unless it was carefully examined and inspected by the company, or unless his attention was specially called to its dangerous condition; and that the cant-hook used by Nick Williams was so badly worn, both as to the wooden part and at the point of the hook, that the metal hook would not hold a log properly. It was further alleged that the plaintiff was not injured by reason of negligence on the part of his coemployee, but

by reason of that of the master. Under these allegations it can not be said as matter of law that the master was free from fault, or that the plaintiff, or even his fellow-servant, had equal opportunity with the master for knowing of the danger, or that the plaintiff was lacking in ordinary care. Nor does merely calling the tool a "cant-hook" alone serve to free the master as matter of law from liability, under these allegations. The evidence when introduced may or may not make out a case authorizing a recovery by the plaintiff, but it can not be said that the allegations of the petition failed to do so.

It was contended that if the master furnished tools which were good, and another which was bad, and a fellow-servant selected the defective tool, this was the act of the fellow-servant, and the master was not liable for the result. The allegations on this subject have already been mentioned. If a master discharged the duties imposed on him by law, and a fellow-servant by virtue of his negligence caused the injury, the master would not be liable. But if the master is guilty of negligence proximately causing the injury, he would not be freed from liability although the fellow-servant may likewise have been negligent. Under the plaintiff's allegations, it does not appear that he was injured by reason of negligence of a fellow-servant, without negligence of the master. *Ocean Steamship Co.* v. *Matthews*, 86 *Ga.* 418 (12 S. E. 632); *Cheeney* v. *Ocean Steamship* *Co.*, 92 *Ga.* 726 (19 S. E. 33, 44 Am. St. R. 113); *Loveless* v. *Standard Gold Mining Co.*, 116 *Ga.* 427 (42 S. E. 741, 59 L. R. A. 596); *Jackson* v. *Merchants and Miners Transportation Co.*, 118 *Ga.* 651 (45 S. E. 254).

The demurrer raises the contention that the plaintiff himself was negligent in turning to get another log, in not perceiving the danger, and in choosing a more dangerous way to perform his work, when he could have selected a safer one. It can not be said from the face of the petition that the plaintiff was negligent, or chose between two ways to perform his work, one of which was fraught with danger. The demurrer is in part speaking in its character.

The case must be remanded to the trial court where the facts may be fully developed by the evidence and the question of liability determined under the law as applicable thereto.

*Judgment reversed. All the Justices concur.*