## 13464. ATLANTIC REFINING CO. *v.* PEERSON.

1. The overruling of the general demurrer was not error.
2. The amended petition was subject to the 3d, 6th, 7th, and 9th special grounds of the demurrer.
3. The other special grounds of the demurrer were properly overruled.
4. The error in overruling some of the special grounds of demurrer to the petition rendered the further proceedings in the case nugatory.

DECIDED JULY 13, 1922.

Action for damages; from Glynn superior court — Judge Highsmith. May 26, 1921.

*Bennet, Twitty & Reese,* for plaintiff in error.

*J. T. Colson,* contra.

BROYLES, C. J. The petition as amended alleged:

" 1. That the Atlantic Refining Company, hereby made defendant, is a corporation with an office, agency, and place of business in said State and county.

" 2. That defendant has injured and damaged petitioner in the sum of $25,000 by reason of the facts hereinafter set out.

" 3. That on the fifth day of September, 1919, petitioner was in the employment of the said defendant as a riveter.

" 4. That at said time defendant was engaged in the construction of an iron smoke-stack, the same being four and one half feet in diameter and about seventy-two feet long; that the same was constructed of curved steel or iron plates joined and riveted together with iron rivets; and your petitioner at said time, together with other employees of defendant, was engaged in the construction of said smoke-stack, at the plant and upon the yards of the defendant near the City of Brunswick in said State and county; and that upon the day of the injury to petitioner said smoke-stack was practically complete, and was lying upon the ground in a horizontal position.

" 5. That at said time and place and about ten thirty in the morning, the foreman of the defendant in the construction of said stack, and under whom petitioner was working, and who was his ' boss,' directed petitioner to crawl into said stack, and at a point approximately the middle of the stack to cut off the head of a certain iron rivet and then to drive the said rivet outward.

" 6. That all tools used on said smoke-stack job by petitioner were furnished by defendant; and, for the purpose of cutting off

the head of said rivet and driving the same outward, the defendant, acting through said foreman, specifically gave to petitioner and directed petitioner to do said work with what was commonly known as a B and O punch.

"7. That said B and O rivet punch was an iron tool, several pounds in weight, with a handle fastened to the center, coming to a blunt pointed end on one end, and the other end being flat for the purpose of receiving the blow of a sledge hammer.

"8. That the petitioner in the discharge of his duties, and thus directed, and with the tool as furnished, crawled into said stack to the point directed, and began the cutting off the head of said iron rivet, petitioner being accompanied by another employee of defendant, whose duty it was to wield and drive a sledge-hammer against the flat end of said punch while said punch was held in position against said rivet by petitioner.

"9. That while thus engaged, and without fault on the part of said fellow servant, and as a result of an usual and ordinary blow by said sledge-hammer upon the flat end of said punch, a piece of the flat head of said punch burst off in pieces, causing pieces thereof to fly off with great force and violence, one of said pieces striking petitioner in the left eye.

"10. That said piece of iron or steel was driven with great force into petitioner's left eye-ball; that petitioner suffered the most intense agony and was carried to his home in said city, where he remained and was confined for four weeks; that for all of said time his pain and suffering, both physical and mental, was acute and severe, but that for the first two weeks he suffered intense agony, that the physician, in order to attempt to save said eye, would not remove said piece of iron therefrom, but permitted nature to remove the same from said eye, the same at the end of twelve days worked itself to the surface of said eye-ball and was removed, but petitioner, as a result of said injury, was totally and permanently blinded in said eye; and the said eye-ball itself was so injured that it became necessary for petitioner to have the same removed; that petitioner continues to suffer at times acute and throbbing pains in the region of said eye-socket; that petitioner's earning power will be decreased and diminished for the balance of his life by reason of said injury, and that petitioner will for life be defaced and deformed by reason of the loss of said eye-ball from

said eye-socket, and that the same causes petitioner and will continue to cause petitioner acute and never ending mental suffering and anguish.

" 11.　That at the time of said injury petitioner was a strong and able-bodied man and hale, and did do a full day's work at his said trade.

" 12.　That at the time of said injury petitioner was receiving from defendant as wages the sum of $175 per month.

" 13.　That at the time of said injury petitioner was forty-five years old, and had a reasonable expectancy in life of —— years.

" 15.　Despite said injury and damage to petitioner in the said sum of twenty-five thousand dollars, defendant fails and refuses to pay the same.

" 16.　That said defendant was negligent about the premises, and unlawfully caused said injury and damage to petitioner by reason of the following:

" (a)　In furnishing petitioner with an unsafe appliance and equipment with which to do his work.

" (b)　That said B and O punch should have been so constructed and tempered as that the same would not have shivered and burst as aforesaid, and thus caused petitioner to be injured and damaged as aforesaid.

" (c)　That said hammer was defective and that the said defendant knew it.

" (d)　That the said punch was defective and the defendant could have ascertained it by the exercise of ordinary care and diligence.

" (f)　That said tool was not reasonably safe for one who operated it with ordinary care.

" (g)　That it was the duty of the defendant to have made a reasonable inspection of said punch and instrument, which had it been made the defendant would have learned of said defect.

" (h)　That it was the duty of the defendant and master to furnish a suitable punch for the due prosecution of the work for which the petitioner was employed; but that said punch, furnished as aforesaid, was not such a suitable instrument for the doing of the aforesaid specific work of cutting off the head of said rivet.

" (i)　That defendant was negligent in not furnishing petitioner with a tool equal in kind to that in general use, and reasonably safe

for petitioner who operated it with ordinary care and diligence; for that had petitioner [defendant] so done it would have furnished petitioner with a side rivet cleaver, such a side rivet cleaver would have made easy the cutting off the head of said rivet, and would thus have avoided said injury.

" (*j*)  That plaintiff had no opportunity of knowing of the defects of said tool, and did not have equal means of knowing of said defect, that the defendant, as hereinafter set out, in its haste to complete said smoke-stack, and in the hurrying and haste with which defendant was directing plaintiff to do said work, plaintiff did not have equal means of knowing such defect.

" 17.   That petitioner was without fault in the premises and was in the exercise of due care for his own safety, and did not know and had no reason to know of the said defective punch, tool and instrumentality.

" 18.   That at the time of the injury petitioner was rendered oblivious and otherwise incapable of exercising his information as to the duty of the defendant of furnishing said rivet cleaver, and the use thereof by the petitioner, for that as petitioner was beginning said work of cutting said rivet the said foreman called to defendant [petitioner] to proceed with said work with great haste, as that was all the stack needed before completion and that he was in a hurry to finish it and roll it off so as to begin the work of starting another stack at that time and place, and coupled with the fact that not only was it so dark inside of said stack that he had to feel with his hands for the head of said rivet, and that the heat inside of stack was almost unbearable, being about one hundred and twenty five degrees, all of which facts were known to defendant."

The general and special demurrers interposed were as follows: General demurrer.

1.   Because the allegations in plaintiff's petition do not authorize a recovery against the defendant.

2.   Because the allegations in plaintiff's petition show that he had equal means with defendant of knowing of any defects or dangers in the tool he alleges he was using at the time of his injury.

Special demurrer.

3.   Because plaintiff does not allege in the 16th paragraph or

elsewhere in his petition by what means, examination or test defendant could have discovered the alleged defect or danger in the punch used by him, or in the work he was doing.

4. Because plaintiff's allegation as to defendant's knowledge of the defective or dangerous condition of the punch is ambiguous in that it cannot be determined whether he charges defendant with actual or only implied or constructive notice and knowledge of such defect or danger, and said allegations with reference to such knowledge of defendant should, therefore, be stricken.

5. Because plaintiff does not specifically allege that plaintiff had actual knowledge or notice of the defective condition of the punch.

6. Because plaintiff does not allege how a reasonable inspection of the punch would have disclosed to defendant its alleged defective condition or why the defect did not appear to plaintiff.

7. Because defendant [plaintiff] does not allege that he did not know that the punch being used by him was an improper instrument, and that it was not a side rivet cleaver, which he alleges would have made easy the cutting of the rivet.

8. Plaintiff does not allege that he did not have equal means with defendant of knowing or seeing the defective condition of the punch.

9. Defendant demurs to and moves to strike the allegations in the 18th paragraph of plaintiff's petition, (a) because they are irrelevant and immaterial to any issue in the case; (b) because they are inflammatory and tend to prejudice the legal rights of defendant.

The court overruled the demurrers, the case proceeded to a verdict in favor of the plaintiff, the defendant's motion for a new trial was denied, and to this judgment, as well as to the overruling of the demurrers, it excepted.

1. The petition as amended was not subject to either ground of the general demurrer. See, in this connection, *Williams* v. *Garbutt Lumber Co.*, 132 *Ga.* 221 (64 S. E. 65).

2. The amended petition was subject to the 3d, 6th, and 7th grounds of the demurrer. See, in this connection, *Kemp* v. *Central of Georgia Ry. Co.*, 122 *Ga.* 559 (3) (50 S. E. 465); *Green* v. *Babcock Brothers Lumber Co.*, 130 *Ga.* 469 (4) (60 S. E. 1062); *Hightower* v. *Southern Ry. Co.*, 146 *Ga.* 279 (2, 3),

282 (91 S. E. 52, L. R. A. 1917C, 481) ; *McMath Plantation Co. v. Allison,* 26 *Ga. App.* 744 (4) (107 S. E. 420). The 18th paragraph of the petition was also clearly subject to the 9th ground of the demurrer. *Ryle v. Macon News Printing Co.,* 25 *Ga. App.* 106 (102 S. E. 835) ; *Bogush v. Southeastern Mfg. &c. Co.,* 25 *Ga. App.* 268 (103 S. E. 41). Furthermore the petition, construed most strongly against the plaintiff, shows that he was given the improper tool before he entered the stack to do the work in which he was injured, and that he then (before he entered the stack) had time and opportunity to discover that the proper tool had not been given him, the petition showing that the foreman's order to the plaintiff to proceed with the work with great haste was given after the plaintiff had received the improper tool and after he had taken it with him into the stack. It clearly appears that the alleged darkness and heat inside the stack did not render the plaintiff " oblivious and otherwise incapable of exercising his information as to the duty of the defendant of furnishing said rivet cleaver," because, as has just been stated, the defendant was furnished with the alleged improper tool before he had ever entered the stack.

3. The remaining special grounds of the demurrer were properly overruled. See, in this connection, *Cedartown Cotton & Export Co. v. Miles,* 2 *Ga. App.* 79 (58 S. E. 289) ; *Southern States Cement Co. v. Helms,* 2 *Ga. App.* 308 (58 S. E. 524) ; *Babcock Lumber Co. v. Johnson,* 120 *Ga.* 1030 (3) (48 S. E. 438).

4. The error in overruling the special grounds of the demurrer as pointed out rendered the further proceedings in the case nugatory.

   *Judgment reversed. Luke and Bloodworth, JJ., concur.*