## 19385. SOUTHERN RAILWAY CO. *et al. v.* JENKINS.

PER CURIAM. No cause of action was set out in the petition in this case, in which it was sought to recover for injuries to a railroad employee, alleged to be due to the defective condition of a ladder which fell when he was ascending it for the purpose of working on a locomotive, and to the negligence of a coemployee in striking the ladder; and the court erred in overruling the general demurrer.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur. Luke, J., dissents.*

DECIDED APRIL 10, 1929.

*McDaniel, Neely & Marshall,* for plaintiff in error.
*Hewlett & Dennis,* contra.

LUKE, J., dissenting. The only question presented by the record is whether the trial judge erred in overruling the general demurrer to the following petition:

"The petition of Mrs. Annie Jenkins respectfully shows:

"1. That the defendants herein are the Southern Railway Company . . and H. Guy White, a resident of said State and county.

"2. That defendants have jointly injured and damaged your petitioner in the sum of $40,000, by reason of the facts hereinafter set forth.

"3. That at all times herein mentioned your petitioner was the mother of one Thomas W. Jenkins, upon whom she was dependent for support, and who actually contributed to her support in the sum of $300 per annum.

"4. That the said Thomas W. Jenkins, at all times herein mentioned, was a machinist in the employment of defendant Southern Railway Company.

"5. That defendant White was likewise an employee of said railroad company, and, as such, it was his duty to inspect the appliances used by the said Jenkins in the performance of his duties as a machinist.

"6. That on or about the 2d day of July, 1926, the said Jenkins was, pursuant to his duty, at work upon the dome of an engine, which was the property of and within the shops of defendant railway company, located in said State and county.

"7. That in order to perform his work, it was necessary for

him to mount the side of said engine, and for the purpose of doing so defendant had provided a ladder.

"8. That at the time the said Jenkins was working upon said engine other servants of defendant railway company, whose names are unknown, were likewise engaged in said work, and, for the use of all parties so engaged, defendant, through one of its servants, whose name is unknown, had, on the day prior to the injuries complained of, placed a ladder upon said engine, by which those who were to work upon the dome thereof might go up and down.

"9. That defendant railway company's ladders employed in such work were customarily equipped with spurs on the ends which were upon the ground or floor of said shops.

"10. That the ladder so placed upon said engine was equipped with spurs, but that from long use they had become defective, in that they were old, worn, and smooth at the end to such an extent that they would not engage the floor upon which they were placed, and thus hold the ladder securely in its upright position.

"11. That it was the duty of the defendant White to inspect the ladder in question, and to inspect the spurs affixed to same, and to report to his employer any defects or insufficiencies in connection therewith, and, in the event said spurs were not in good condition, to have said ladder withdrawn from use until properly equipped.

"12. That it is impossible for one using a ladder so equipped after being placed in position to tell from a casual inspection and examination thereof whether or not the spurs are in good condition and actually engage the floor and thereby fasten and hold the ladder in the proper position, because that said spurs are fastened to the rear of the ladder and at that part of same that rests on the ground, and the projections therefrom run downward into the floor and are thus concealed from view.

"13. That your petitioner's son made no close and minute examination of said ladder; that the same looked to be in good condition with respect to the spurs attached to same, and he had no reason to suspect any defects or insufficiencies in same.

"14. That it was not the duty of petitioner's said son to make such an inspection of said ladder as would be necessary in order to determine whether or not any insufficiencies existed as to the spurs attached to same.

"15. That petitioner's said son was not warned by any servant or agent of defendant as to any deficiencies in said ladder, nor did he know of same.

"16. That on the above-named date, as was usual and customary, petitioner's said son started up said ladder for the purpose of doing his work; that arriving at the top of same, and while he was approximately ten feet above the floor of said shop, said ladder was stricken and dislodged by a servant of defendant railway company, whose name is unknown, as he passed by the base of the same, and was caused to fall by reason thereof, and by reason of the insufficiencies and defects in said spurs, and thereby petitioner's son was hurled violently and precipitately into a pile of scrap-iron near by, receiving serious and permanent injuries which occasioned his death on November 7, 1926.

"17. That a proper inspection of said ladder would have revealed the defects and insufficiencies complained of, and, once revealed, it was the duty of defendant to withdraw said ladder from use or to give notice to petitioner's son of the defects and insufficiencies thereof.

"18. That defendants knew, or in the exercise of ordinary care should have known, of the defects and insufficiencies therein existing.

"19. That petitioner's said son was a strong and able-bodied man of the age of 48 years, earning and capable of earning $36 per week, with time and a half for all overtime, and this action is brought for the full value of his life.

"20. That at the time of his injuries he was free from fault and blame, was in the exercise of ordinary care, and his injuries and death were the proximate result of the joint and concurring acts of negligence of the defendants in the particulars hereinafter set forth.

"21. That the defendants were negligent: (a) in failing to properly inspect said ladder; (b) in failing to properly equip said ladder with spurs that would engage the floor and hold the same in an upright position; (c) in failing to warn the deceased of the defects and insufficiencies with respect to said spurs; (d) in furnishing to deceased, as a safe instrumentality with which to work, a ladder that was equipped with spurs so old and worn as not to engage the floor and hold said ladder in an upright posi-

tion; (e) in striking said ladder and causing the same to be moved at its base at the time in question and when same was not secured to the floor by means of spurs.

"Wherefore, the premises considered, petitioner prays judgment against defendants; that process may issue," etc.

The demurrer was on the following grounds: "(1) No cause of action is set out in plaintiff's petition against defendants or either of them. (2) The facts as set forth in plaintiff's petition do not constitute a cause of action against defendants or either of them. (3) The facts averred in plaintiff's petition impose no liability upon defendants or either of them."

As I see it, the gist of the action is the alleged defective ladder, and the defense mainly relied on its "assumption of risks." Authorities from other States might be cited indicating that the petition in this case does or does not set out a cause of action; and I might quote Georgia cases which, from general statements contained in the headnotes, lend color to either the contentions of the plaintiff in error or those of the defendant in error. However, the true rule appears to be that the facts of each case should be measured by the law as laid down in the Civil Code (1910), §§ 3130, 3131. In this connection see the decision in *Williams* v. *Garbull Lumber Co.*, 132 *Ga.* 231 (64 S. E. 70), where it was said: "We do not find it necessary in this State to adopt any arbitrary rule as to tools bearing certain names, or described somewhat indefinitely as 'simple tools.' If what is called the 'simple-tool rule' is based on the principle of equality or superiority of opportunity for knowledge on the part of a servant, that principle forms a part of the test applied by our Civil Code (§§ 2611, 2612) in a suit against a master by a servant for an injury claimed to have arisen from the negligence of the master in failing to comply with the duties imposed on him in regard to machinery, and which, as already seen, has been held to apply in principle to cases arising from defective tools. The application of the rule that it must appear that the master knew or ought to have known of the defect or danger, and that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof, to the facts of the particular case under investigation will furnish a solution of the question of liability or non-liability. In the determination of each case, the nature, char-

acter, and simplicity or complexity of the tool is, of course, an important factor for consideration."

Applying the foregoing principles to the case at bar, I am of the opinion that the petition is good as against the general demurrer, and that the court did not err in overruling the demurrer. The facts of this case differentiate it from the case of *Henderson* v. *Mingledorff,* 27 *Ga. App.* 165 (107 S. E. 884).