CHRIST J. MILLER v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 17, 1902.

Nos. 12,859—(167).

**Failure of Master to Provide Safe Appliance.**

> Facts in an action for personal injuries resulting from the failure of
> the master to furnish a safe and proper instrumentality for his ser-
> vant's use in the construction of a bridge, whereby such servant was
> injured, considered, and *held*, upon the evidence, that the jury were
> justified in finding that the master had been negligent in his duty in
> that respect.

Action in the district court for Stearns county to recover $5,125
for personal injuries. The case was tried before Searle, J., and a
jury, which rendered a verdict in favor of plaintiff for $1,500.
From an order denying a motion for judgment in its favor not-
withstanding the verdict or for a new trial, defendant appealed.
Affirmed.

*W. E. Dodge* and *Geo. H. Reynolds*, for appellant.
*Donohue & Stephens* and *Calhoun & Bennett*, for respondent.

LOVELY, J.

Action for personal injuries sustained by an employee while at
work for defendant in the construction of a bridge over the Shell
river. While turning a jackscrew by means of a defective crow-
bar, it broke, whereby he was injured. The answer is a general
denial. Plaintiff recovered a verdict. A new trial was denied.
Defendant appeals.

From the evidence, which the verdict requires us to adopt, it
substantially appears that plaintiff, a young man thirty years old,
was required in his service to work on a scaffolding eighteen feet
above the ice in the bed of the Shell river, and to stand on a plank
twelve inches wide to assist in the turning of a jackscrew placed
on such plank in order to raise one end of the bridge. He usually
worked with the foreman of the bridge crew, and on the occasion
when he was injured took from a tool box where the tools used in

[1] Reported in 88 N. W. 758.

his employment were commonly kept a crowbar such as had been previously used by him and others in turning the jackscrew. He carried the bar to the jackscrew, and while standing on the platform inserted it in one of the holes of the screw, and with another servant applied some force thereto to turn the same, when the bar suddenly broke a short distance from its end, and plaintiff was, by means of such force and the breakage, thrown backwards, and precipitated upon the ice below, receiving the injuries by his fall, for which he recovered substantial damages.

It is unnecessary to cite authorities to support the very elementary legal questions involved on this appeal. There is no doubt whatever that it is the duty of the master to furnish reasonably safe instrumentalities for the use of his servants in the performance of their duties in his service; also to exercise ordinary care to keep them in that condition. There was evidence reasonably tending to show that the crowbar had been used in the same work plaintiff was performing for some time; that he, as well as others, had so used the same for that purpose; that it was at the end of each day placed with other tools in a tool box, and each morning taken therefrom for such use; that plaintiff was performing his duties in the usual way, when he was, by the fact of the breakage, thrown to the bed of the river below. There was also evidence tending to show that four or five days before the accident the crowbar was injured during a fire in defendant's coal sheds by pouring upon it, while heated, large quantities of water. The injurious effect of the application of water to heated steel by weakening its strength was shown by competent evidence of qualified witnesses to support plaintiff's claim in that respect, and it would seem to us quite probable, even from common knowledge applied to the facts, that such a result would follow, and the jury might be justified in the conclusion that the crowbar was defective after the fire, even if of good quality when furnished. This evidence, taken in connection with the effect of the application of the slight force shown to have been applied in attempting to move the screw by it when it broke, might well furnish grounds to support the conclusion that a reasonable inspection would have discovered its condition.

85 M.—18

While the foreman in charge of the plaintiff worked with him, it does not appear that he or any one else was charged with the duty of inspecting and examining the tools for imperfections where circumstances arose to change their character; and, if such inspection had taken place, the consequences that followed might reasonably tend to show that it was incomplete and ineffective. The duty to furnish safe instrumentalities is one of the absolute duties of the employer which he may commit to other servants, but it does not appear that he did so here. The plaintiff being without fault, as found upon sufficient evidence, his right to recover depends, therefore, entirely upon the imperfect character of the implement he was given to work with, and which was broken while in use in his master's service.

Order affirmed.