HUGH M. MORRIS v. EASTERN RAILWAY COMPANY OF
MINNESOTA.[1]

December 19, 1902.

Nos. 13,207—(164).

**Pleading.**
   The complaint in a personal injury action *held* to state facts sufficient
to constitute a cause of action.

**Case Distinguished.**
   The allegations found in such complaint distinguished from the facts
before the court in Hefferen v. Northern Pac. R. Co., 45 Minn. 471.

Appeal by defendant from an order of the district court for
Hennepin county, Harrison, J., overruling a demurrer to the com-
plaint. Affirmed.

*Charles S. Albert, Heber McHugh* and *J. A. Murphy,* for appellant.
*John W. Arctander, Ludvig Arctander* and *Victor Linley,* for re-
spondent.

COLLINS, J.

This appeal is from an order overruling a general demurrer to a
complaint in a personal injury action brought by a guardian ad
litem. It was alleged in this pleading that the defendant care-
lessly and negligently provided for the use of a minor in its em-
ployment, named Morris, aged seventeen years, whom we shall
hereafter call the "plaintiff," and his brother, a co-employee, a
"flogging hammer," so called, to be used by them in connection
with what is known as a "side-set" (a cold-chisel with a handle
attached), in cutting off rivets from the tank frame of a locomotive
tender in the shop in which they worked; that this hammer was
manufactured by the defendant itself; that it was defective and
dangerous, in that the surface of its head was not smooth, and
contained several holes or indentations, which made it a danger-
ous, unsafe, and unfit tool; that these defects were the result of
careless and improper manufacture; that, during the process of

[1] Reported in 92 N. W. 535.

manufacturing, the defendant could readily have discovered these holes or indentations, in the exercise of ordinary care and diligence, that, had said hammer been properly inspected by experienced men before it was turned over to defendant's employees, these defects could have been discovered readily, and could have been remedied, and the danger removed; that neither the plaintiff nor his brother knew of this defective condition of the hammer, or of the existence of these holes or indentations in its head, nor could they, or either of them, have discovered the same by the exercise of reasonable care, and further that, had they detected these defects, neither knew, understood, or appreciated the danger incident to using it upon the side-set, or the probability of chips or slivers being formed thereon by reason of the defective condition of the hammer, or the danger that such chips or slivers might be knocked off, nor did they know of the danger to be anticipated in case they should be. The injury received by the plaintiff was to his eye, and it was alleged that this was caused by the knocking off and flying of a sliver or chip from the side-set which plaintiff was holding when it was struck by the hammer in his brother's hands.

It is contended by counsel for defendant that in no manner do the facts alleged in this complaint differ from those established at the trial and considered in Hefferen v. Northern Pac. Ry. Co., 45 Minn. 471, 48 N. W. 1, 526, in which it was held that a master who provides and keeps proper tools for the use of his servants, whose duty it is to select such as they may require for their work, is not, in general, responsible if a servant voluntarily uses a tool which has become obviously defective and unfit for use, and such servant is injured by reason of such defect. We do not regard that case, tried on its merits, as controlling this, presented on demurrer. It is true that there a minor of about the same age as plaintiff was injured in the eye by a flying chip or sliver from the head of a cold-chisel used, with a handle, as a side-set, which chisel had become battered from use, and was in such a condition that it was apparent that fragments were liable to be broken off by blows from a hammer. This is what actually occurred and caused the

88 M.—8

injury while young Hefferen and another man were at work cutting off rivets. Here the defect complained of was in what is called a "flogging hammer,"—a tool which we must assume is somewhat different from an ordinary hammer, and was not caused by, or the result of, use or wear, but, according to the allegations of the complaint, a defect in making; the manufacturer being the defendant itself. In that case it further appeared from the testimony that the defendant kept a full supply of hammers for the use of its workmen; that, when they had use for such tools, they made their own selections from the supply, and, when a hammer was found out of order, it was the workman's duty to take it to the tool repairer for restoration.

Evidently care was taken to avoid such allegations in the pleading now before us. Fairly construed, the allegation is that this hammer was furnished to plaintiff and his brother for the purpose for which it was used, while in the Hefferen case it appeared from the testimony that the plaintiff, or the man with whom he was working,—a fellow servant,—had selected the defective hammer from a large number furnished by defendant for the use of its workmen, and all in good order, presumably. Even in the Hefferen case the question now before us was not lost sight of, as is manifest from that part of the opinion wherein it is observed that the servant may generally "assume, without particular inspection, that the instruments which he is thus required to use are reasonably safe. But when from use they have become obviously defective and unfit, and the master has provided others, so that the servant knows that he is not required to use the former, the reason of the law holding the master to responsibility is inapplicable." It is clear that in the Hefferen case the fact that the side-set used by the men had become defective and dangerous through use and wear was given great weight, and that it was expressly intended to suggest in the opinion that the principle therein announced might not be pertinent if the tool which caused the injury was defective and unfit for use because of improper manufacture, for which the master himself was responsible.

We do not wish to be understood as now holding that there is any substantial distinction between tools which are of defective

manufacture and those which have become dangerous through use or wear. Our suggestion is that there may be, depending somewhat on the character of the tools. We are clearly of the opinion that the complaint before us cannot be disposed of on demurrer under the rule announced in the Hefferen case, in which all of the facts were before the court.

It is urged that we must take it for granted, as a matter of common knowledge, that, in the extensive shop in which plaintiff alleged he was injured, there must have been a number of hammers of this same character, and that he and his fellow workman were bound to select one in good order, and for this reason alone the principle found in the Hefferen case must be applied, and therefore the complaint failed to state a cause of action. But it is here alleged that the plaintiff, as well as his co-employee, did not know, nor could either ascertain by the use of reasonable care and diligence, that there was any defect whatsoever in this particular hammer. If these allegations are true,—and for the purposes of this opinion we must assume them to be so,—a case is presented where the fact of a large supply of hammers in the shop from which a selection may be made is entirely immaterial, because, according to the pleading, each and both of the men were unable and incompetent to determine whether the hammer in question (not an ordinary one) was or was not defective, while its defects could easily have been ascertained by a capable inspector.

Again, it is contended as the universal rule that the master does not owe to workmen the duty of inspecting small tools, such as saws, planes, wrenches, bars, augers, or hammers. It is true that there are cases in which this proposition is laid down as to tools which are in use, or have become worn by use; but, as before stated, this hammer was not worn and made unsafe by use. It was defectively manufactured by defendant itself, and was never a reasonably safe instrumentality. And further, it was a "flogging hammer," not a common hammer,—not one used for ordinary purposes.

As against a general demurrer, we are of the opinion that the complaint stated a good cause of action, and the order appealed from is affirmed.