# JOHN GIBBONS v. ARTHUR C. GOODING.[1]

October 13, 1922.

No. 22,832.

**Workmen's Compensation Act—contractor's servant cannot have benefit of act and of common-law action.**

1. One who devotes substantially the whole of his time for a year to supervising the construction of a large building owned by him and another, and in the construction of which the owners hire and pay wages directly to night watchmen at the building, is under the Workmen's Compensation Act, so that if a servant of the contractors erecting the building, in the course of his employment thereon, is injured through the negligence of one of such owners, the servant may not proceed with a common-law action for negligence against the owner, when it appears that he has sought and obtained compensation from his employers' insurer under the said act.

**No violation of ordinance or statute.**

2. The owner was not violating any ordinance or statute in doing the act which caused the injury to plaintiff.

**Accident arose out of and in course of employment.**

3. The evidence shows that the injury to plaintiff did result from an accident arising out of and in the course of his employment, hence he cannot maintain this action on the theory that he had departed from his employment when the injury occurred.

**Rulings correct.**

4. There were no errors in the rulings upon the trial.

Action in the district court for Olmsted county to recover $30,000 for personal injuries. The case was tried before Callaghan, J., who at the close of the testimony directed a verdict in favor of defendant. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Leach & Leach*, for appellant.

*Granger & Clemens*, for respondent.

[1]Reported in 190 N. W. 256.

HOLT, J.

The facts controlling the determination of this action are substantially as follows: Defendant and one Conley were the owners of lots in Rochester, Minnesota, upon which, in June or July, 1919, they began the erection of a six-story hotel. The main part of the work was let to Maske & Matzke upon the basis of actual cost plus a percentage. Both owners gave practically all their time and attention to supervising the construction of the hotel during a whole year, except that defendant was away from January 26 till March 26, 1920. They also hired night watchmen to take care of the property and to heat the building when heat therein was necessary, and also a man for two or three days to do some small part of the construction not included in the contracts. Plaintiff was employed by Maske & Matzke about February 1, 1920, to mix mortar for the plasterers. The plastering proceeded from the first floor up. At the same time carpenters and other workmen were engaged upon whatever work could be done conveniently.

There had been installed a passenger elevator prior to the accident to plaintiff. This elevator was fully completed except for the glass in the doors. It had been used for some time by each of the owners and by a foreman in passing from floor to floor in the work they were attending to. On April 8, 1920, defendant was in the sun room on the roof of the building and had the elevator at that level. Plaintiff was mixing mortar in a small room near the elevator on the sixth floor. Two young women had gained entrance to the building for the purpose of selling tickets for a dance to be given for the benefit of some strikers, and had canvassed the workmen up to the sun room. Defendant noticed them as they were about to descend by the stairway and offered to take them down with him in the elevator. They stepped in. As the elevator descended, plaintiff stuck his forehead into the elevator shaft through one of the two upper openings in the door left to receive the glass and was severely injured. This elevator door was of steel, solid up to a distance of 3 feet and 7½ inches above the floor, then came openings for four panes of glass about 15 by 19 inches in size and separated by steel cross bars one and a half inches wide.

Plaintiff's excuse is that he intended to look down the shaft to see if his partner was on the next floor below and ready to pass some strips up. The cable attached to the counterweight was then in motion and visible to one looking into the shaft through the opening where plaintiff stuck his head. He knew that the elevator was used occasionally by the men as above stated. There was testimony that, as the plasterers proceeded from one floor to the one next above, they would use the elevator shaft to pass up some strips or scantling used as a straight edge in rooms where there were beams to be plastered. The testimony of plaintiff would seem to convey the meaning that these strips, some 12 feet in length, were passed through the openings in the elevator door where the glass was to go. But obviously this was not the procedure. A person could reach in through the openings and unlatch the door, and, no doubt, when these few straight edges were so passed up, the elevator doors were both opened. There seems to have been no occasion to use these strips on the sixth floor, since there were no beams there to be plastered. There is no evidence to show that any one of those who used the elevator ever saw or knew that the workmen had been making use of the elevator shaft in passing up these strips or any other material, or used the openings in the doors for any purpose whatever. For the injury received in the manner stated, plaintiff brought this action alleging defendant's negligence.

The answer denied negligence, set up contributory negligence, and averred that plaintiff, his employers, and defendant were all under the Workmen's Compensation Act, and that plaintiff had availed himself of that act and had been paid compensation thereunder by his employers' insurer. The evidence was undisputed that plaintiff had claimed and had been paid compensation at the rate of $15 per week up to January, 1921.

Defendant moved for a directed verdict on three grounds, viz.: (1) The evidence failed to show defendant's negligence; (2) plaintiff's contributory negligence appeared; and (3) both plaintiff and defendant were under part 2 of the Workmen's Compensation Act and plaintiff had elected to seek and receive compensation there-

under. The court granted the motion on the last ground. The appeal is from the order denying plaintiff's motion for a new trial.

Plaintiff disputes the proposition that defendant was under the compensation act. It is said that the employes hired were not employed in the usual course of the owners' business, but in a casual and incidental occupation. The erection of this hotel was a considerable venture. Both owners devoted substantially all their time to that business. For a year they had none other. True, they let contracts for all but insignificant parts to contractors. But they supervised the performance of these contracts. And as most of the contracts were on the basis of the actual cost and a percentage to the contractors for their profit, or sole compensation, it was important to the owners that the materials brought to the premises be cared for and the construction protected so that pilfering, waste or damage to unfinished work would not increase the cost. A night watchman was therefore employed and paid by the owners. At times two were so employed when fires to protect and facilitate the work were needed. In this case, under the contracts referred to, the owners were at liberty to make and did make such alterations and additions as they deemed advisable. That the watchmen were not on duty during most of the time the construction force was at work does not seem to us significant. They were employes of the owners, and if accidentally injured would assuredly come under the protection of the compensation act, for subdivision d, section 8230, G. S. 1913, provides that the term "employer" as used in the act "shall mean every person not excluded by section 8 [8202] who employs another to perform a service for hire and to whom the 'employer' pays wages." That would also bring the employers here under the act as to third parties who are covered thereby. Defendant's alleged negligence arose in the course of the occupation or business he was then engaged in and in which the hiring of the night watchmen was a part. Defendant was not excluded by section 8 of the act [8202, G. S. 1913]. State ex rel. Lundgren v. District Court of Washington County, 141 Minn. 83, 169 N. W. 488. The erection of this many storied, fire-proof hotel to which the owners devoted so long a time to the exclusion of all other business or

occupations, is not on a par with the erection of the small chicken-house involved in State ex rel. Lennon v. District Court of Douglas County, 138 Minn. 103, 164 N. W. 366. We hold that defendant, as one of the owners of the hotel engaged in supervising its erection and employing and paying watchmen in the enterprise, was within the Workmen's Compensation Act.

But it is urged that in moving this elevator before the doors thereto were provided with glass, as stated, defendant was guilty of a criminal act, and therefore cannot invoke the compensation statute to escape the common law liability for the tort. It is said he transgressed an ordinance of the city and certain statutes. As to the ordinance it is enough to state that it is not applicable, for clearly its sole aim is to protect against fires and not to safeguard as against dangers from other sources. The statutes cited as violated are: Sections 3862, 3873, 3874, 3881 and 8759, G. S. 1913. The only one of these sections to touch elevators or elevator shafts is 3873 and that relates to workshops and factories and the protection of employes therein. But, even granting that this hotel during the construction could be classed as a factory, we find that this door to the elevator fully complied with the demands of the statutes, for it barricaded the opening to the shaft an inch and a half higher than required. There was no ordinance or statute violated in moving this elevator, and no criminal or wanton negligence on any other ground so far as concerned plaintiff and workmen working in and about this building and elevator shaft. To us the claim is unreasonable that defendant should have anticipated that any ordinary workman would be so reckless as to stick his head in the openings of this shaft after the elevator was installed, without first assuring himself that the elevator was at rest and not liable to be moved. There were no children or persons of immature minds about the premises.

Appellant says: "Plaintiff was employed to mix mortar at the time of his injury. He left his place of employment, walked out of the room where his mixing box was, across the hall, and placed his head in the elevator well. * * * He had departed from his occupation on an excursion of his own, for which his employer was

not responsible." Hence, it is argued, that plaintiff was not under the compensation act when injured. If this argument has any convincing force it tends to demonstrate defendant's freedom from negligence, for how could he reasonably anticipate that the persons who were employed about the building would depart from their duties and enter upon hazardous enterprises of their own. But another answer to the argument is that plaintiff has taken the position that he was within the act and has received compensation thereunder as one injured in an accident arising out of and in the course of his employment.

Error is assigned because the court refused to permit plaintiff to prove that the party who installed the elevator warned defendant against its operation until the doors thereto were provided with the glass panes. Whatever danger to others might result from the openings in the doors, if they placed any part of their body therein while the elevator moved past, was perfectly obvious to defendant, and no warning could make it more so. The ruling could not be prejudicial.

Nor can we see the bearing upon the issues in the case that shortly after the accident the owners formed a corporation to hold the hotel. The offer to prove that from the first the owners planned to turn over the property to a corporation, but because of some unintentional delay it was not done until after the accident to plaintiff, does not seem to us material, for from all that appears this turning over to a corporation did not affect the actual interest of defendant in the hotel or the manner of its erection. We fail to see wherein the excluded evidence could aid plaintiff.

Apart from the effect of the Workmen's Compensation Act, the writer is of the opinion that plaintiff wholly failed to show actionable negligence on the part of defendant, and also that contributory negligence appears as a matter of law.

The order must be affirmed.