JOHN R. CAYSE v. FOLEY BROTHERS, INC.
H. R. NICHOLS COMPANY, THIRD-PARTY DEFENDANT.

96 N. W. (2d) 238.

April 10, 1959—No. 37,523.

*Lipschultz, Altman, Geraghty & Mulally* and *James H. Geraghty*, for appellant.

*Sullivan, Stringer, Donnelly & Sharood*, for respondent.

DELL, CHIEF JUSTICE.

This is an action against a general contractor by the employee of a subcontractor to recover for personal injuries sustained by said employee which, it is claimed, were the result of the general contractor's violation of our statutes and the rules of the Industrial Commission. Plaintiff prevailed in the trial court and defendant appeals from the denial of its alternative motion for judgment notwithstanding the verdict or a new trial.

Defendant, Foley Brothers, Inc., had been engaged by the Hamm Brewing Co. to construct an addition to one of the company's buildings according to certain plans and specifications which were provided. Aside from its own workers defendant employed certain subcontractors for various jobs, among them the H. R. Nichols Co., a plumbing and steam-fitting concern, which employed plaintiff. Throughout the period of construction the brewery continued its operations in the old building. To maintain cleanliness there, a temporary wall was built as soon as the old wall was removed. A door in the temporary wall was usually kept locked and workmen on the job gained access to the old building by other means. Permission to use the temporary door could be obtained only from brewery personnel who also kept the keys.

When the exterior wall of the new addition was completed certain pipes, duct work, and valves in the new building had to be connected to the existing plumbing in the old building. This work was performed by plaintiff's employer and had been completed prior to the accident. However, a leaky pipe was discovered in the air-conditioning room in the basement of the old building and plaintiff and a coworker were instructed by their employer's foreman to repair it. The piping was about

10 feet above the floor and just under the piping there was a concrete floor referred to as the mezzanine. The purpose of the mezzanine was to assist brewery personnel in regulating the valves. The mezzanine floor was about 4 feet from the ceiling so that persons could not stand upright on it but were forced to crouch. The floor of the room was usually wet although a drain prevented any water from collecting. The moisture was caused by the air-conditioning machinery, the condensation from the various pipes, and frequent washings of the floor by brewery employees.

When plaintiff and his coworker entered the room they found a ladder which was not long enough to extend above the mezzanine floor but which could be used to get there. They set it up and both of them ascended it, but they were unable to locate the leak without a flashlight which they then decided to obtain. Plaintiff was to descend the ladder first. He placed his left foot on the top rung which was about 6 inches below the floor level of the mezzanine. He was putting his right foot onto the top rung and was about to reach for a pipe to give him support when the ladder skidded out from under him and he fell to the floor, suffering serious injuries.

Numerous ladders of various types were used in the course of this construction. Plaintiff's employer had several stepladders of various lengths available for use by its employees. Defendant, in its carpentry shop, had constructed several portable straight ladders for use on this job and they were in general use not only by its own employees but by employees of the various subcontractors as well. The ladders were made of 2 x 4's with 1 x 4's or 1 x 3's for rungs. They were equipped with neither rubber shoes nor iron hooks at their tops. In the old building the brewery also kept ladders for its employees similar to those built by defendant but equipped either with rubber shoes or with hooks.

The crux of plaintiff's claim is that defendant failed to provide workmen with ladders which conformed to the requirements of M. S. A. 182.12 or 182.13 and the rules of the Industrial Commission promulgated in connection therewith. So far as they are here material, those statutes provide:

§ 182.12. "When practicable, all scaffolds, hoists, cranes, stays,

supports, or other mechanical contrivances, erected or constructed by any person, firm, or corporation, in this state, for the use in erection, repairing, alteration, removal, cleaning, or painting of any house, building, * * * or other structure shall be erected and constructed in a safe, suitable, and proper manner and so erected and constructed, placed, and operated as to give proper and adequate protection to the life and limb of any person employed or engaged thereon, and to any person or employee passing under or in proximity to the same."

§ 182.13. "All floors, standing places, stairways, inclined footways, and ladders and all hand rails or similar protection shall be of substantial construction and at all times shall be kept in good order and repair and so as to be firm and safe for the uses to which they are put."

Defendant's contention is that neither these statutes nor the rules of the Industrial Commission apply to the instant case; that the case is one of common-law negligence; that the defenses of contributory negligence and assumption of risk are available to it;[1] and that plaintiff was either contributorily negligent or assumed the risk as a matter of law and cannot recover.

■ If plaintiff's recovery is to be predicated upon a statutory violation it is clear that it must be under § 182.12, which deals with the duty to provide safe equipment for workmen engaged in construction. Section 182.13 does not deal with this type of work but instead applies to completed plants and buildings. This is readily apparent for two reasons. First, the statute applies to "floors, standing places, stairways, inclined footways, and ladders and all hand rails or similar protection." These terms are indicative not of areas where construction is in progress but rather of specific locations in completed structures. The second and more compelling reason is to be derived from the rules laid down by the Industrial Commission, which were in force at the time of the accident. They are contained in a booklet published in 1950 and entitled "Safety Standards for all Places of Employment in Minnesota." This booklet contains both a General Safety Code and a Construction Safety Code, and it is obvious that in enacting two separate sets of rules

[1]The trial court, viewing this case as arising only out of a statutory violation, refused defendant's requested instructions dealing with these defenses.

the commission recognized and followed the legislative intent to distinguish between the requirements for existing buildings and equipment and the requirements for buildings where construction is taking place.

It is not here necessary to enumerate the provisions of the General Safety Code dealing with ladders. They, like § 182.13, would be applicable only if the brewery were a party to this action and was required to furnish or actually did furnish plaintiff with ladders. But such is not the case. Therefore we look to § 182.12 and to the Construction Safety Code to determine whether there has been a statutory violation. If there is any statutory duty on defendant's part to provide a certain type of ladder for this job, it must be because a ladder is a "mechanical contrivance" within the meaning of the section since it does not fall within the wording "scaffolds, hoists, cranes, stays, [or] supports." There is no applicable provision covering ladders in the Construction Safety Code unless it is contained in § 259(11), which provides:

"Good substantial ladders shall be furnished by the employer and shall be fitted with shoes or other safety devices to keep them from slipping."

All of § 259, however, deals with "Wrecking of Buildings," and while it is difficult for us to understand why such a requirement would not be equally as important in the construction as in the wrecking of a building, the commission has seen fit to make the distinction and it is not our function to rewrite their rules.

We do not believe that a simple ladder comes within the category of "mechanical contrivance" provided for by the statute. It is well settled in this state that a ladder is a simple appliance[2] and as such an employer or master is under no duty to discover and remedy any defects which may occur during ordinary use and which would endanger the user.[3] If a ladder is a simple tool for purposes of ordinary negligence cases it would be anomalous to strain the clear wording of this section by holding that it was something more in the instant case. Accordingly

[2]Mozey v. Erickson, 182 Minn. 419, 234 N. W. 687; Anderson v. Fred Johnson Co. 116 Minn. 56, 133 N. W. 85; Dessecker v. Phoenix Mills Co. 98 Minn. 439, 108 N. W. 516; see Note, 18 Minn. L. Rev. 435.

[3]Hedicke v. Highland Springs Co. 185 Minn. 79, 239 N. W. 896.

we hold that a ladder is not a mechanical contrivance within the wording of § 182.12.

It appears, therefore, that there is no statutory provision upon which the plaintiff herein may base his claim. Thus there is no need to discuss those cases cited by both parties in which the question of a statutory violation was present.[4] It is likewise unnecessary to discuss the issue of whether the defendant would have available to it the defenses of contributory negligence and assumption of risk if this were an instance where the violation of an exceptional statute resulted in an injury to a person whom the statute was designed to protect.[5] Nor do we believe that § 182.18 either enhances or detracts from plaintiff's position. It provides:

"No liability to any person other than an employee, fireman, or policeman shall attach to any owner of any factory, mill, workshop, engineering works, or mercantile establishment, because of the provisions of sections 182.01 to 182.20, until notice to comply with the terms thereof has been served upon such owner by an officer or employee of the department of labor and industry, and reasonable time to comply with such notice has elapsed."

It is true that the plaintiff was not defendant's employee and that the statute could apply to him. However, we find no language in the statute which applies to the owners of construction apparatus; rather it appears that this section, like § 182.13, applies solely to the owners of completed structures and that defendant may not rely upon it as a basis for exemption from liability.

■ It does not follow, however, that plaintiff is wholly precluded from seeking relief. The mere absence of a statutory provision upon which to rest his claim does not prevent his reliance upon the rules of

[4]See, Alsaker v. DeGraff Lbr. Co. 234 Minn. 280, 48 N. W. (2d) 431; Dart v. Pure Oil Co. 223 Minn. 526, 27 N. W. (2d) 555, 171 A. L. R. 885; DeVere v. Parten, 222 Minn. 211, 23 N. W. (2d) 584; Gibbons v. Gooding, 153 Minn. 225, 190 N. W. 256; Kelly v. Theo. Hamm Brg. Co. 140 Minn. 371, 168 N. W. 131; Healy v. Hoy, 112 Minn. 138, 127 N. W. 482; Schutt v. Adair, 99 Minn. 7, 108 N. W. 811.

[5]But see, Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn. L. Rev. 105, 118.

ordinary negligence. Of course this does not change the nature of the ladder in question; it remains a simple appliance within our prior decisions. But the "simple tool" doctrine, while it relieves the employer of the duty to inspect and discover defects which arise in the ordinary use of an instrumentality, does not relieve him of the obligation to furnish tools which are initially fit for the uses to which they may be put.[6] If, at the time defendant constructed and distributed these ladders, it was reasonably foreseeable that one would be used by plaintiff in the performance of his duties and if it was unreasonable to construct the ladders without rubber shoes or hooks, then defendant may have been guilty of common-law negligence. That is a question of fact to be resolved upon a new trial. At such a time defendant will have available to it the defenses of contributory negligence and assumption of risk. We do not think that the evidence in the record before us establishes conclusively that plaintiff was contributorily negligent or that he assumed the alleged risks especially in view of his counsel's sole reliance upon the theory that these defenses were not available to defendant.

■ The final question before us is whether or not plaintiff is left to his remedies under the Workmen's Compensation Act or whether he may also maintain an action for ordinary negligence against defendant. We last had occasion to consider this problem in McCourtie v. United States Steel Corp. 253 Minn. 501, 93 N. W. (2d) 552, and the opinions therein fully cover the applicable case law and the conflicting views involved in interpreting § 176.061. Whatever may be the divergent views of the members of this court in respect to the McCourtie case, it is the law of this state. It is also clear that even the justices who concurred specially agree that in order to limit a plaintiff's recovery it must be shown that the employees of employers who are working on the same

---

[6]Natalino v. St. Paul Bridge & Terminal Ry. Co. 190 Minn. 118, 251 N. W. 9; Id. 190 Minn. 124, 251 N. W. 669, certiorari denied, 292 U. S. 631, 54 S. Ct. 642, 78 L. ed. 1484; Vant Hul v. G. N. Ry. Co. 90 Minn. 329, 96 N. W. 789; Morris v. Eastern Ry. Co. 88 Minn. 112, 92 N. W. 535; Kennedy v. Chicago, M. & St. P. Ry. Co. 57 Minn. 227, 58 N. W. 878; Mercer v. Atlantic Coast Line R. Co. 154 N. C. 399, 70 S. E. 742; 3 Labatt, Master & Servant (2 ed.) § 924a, note 12; and see, Annotations, 63 A. L. R. (2d) 694 and 20 A. L. R. (2d) 868.

project are also exposed to the same hazards.[7] The record before us conclusively shows that plaintiff and defendant's employees were not exposed to the same hazards. Defendant's employees were engaged solely in the construction which was taking place in the new building. They had no occasion to enter the old building; certainly they would have no reason to be present in the air-conditioning room or to ascend to the mezzanine. It follows that § 176.061, subds. 1 to 4, do not apply and that plaintiff is free to pursue his common-law remedies.

Other issues have been raised by the parties but they are not material to the disposition of this case and do not merit consideration at this time.

Reversed and new trial granted.

---

[7]McCourtie v. United States Steel Corp. 253 Minn. 501, 522, 93 N. W. (2d) 552, 566.