## DWAIN BECKEL v. T. S. ALEXANDER AND ANOTHER.

134 N. W. (2d) 304.

April 9, 1965—No. 39,515.

W. B. Sherwood; John R. Krouss, and Johanson, Winter, Lundquist & Sherwood, for appellant.
Curtis L. Charlson, for respondents.

ROGOSHESKE, JUSTICE.
Plaintiff brought an action for damages for personal injuries sustained in a fall from a ladder owned by defendants while he was engaged in constructing a fireplace for them. The jury found for plaintiff. Thereafter, the court granted defendants' motion for judgment notwithstanding the verdict and plaintiff appeals.

The court found no actionable negligence as a matter of law. The question presented, which we believe is decisive of the appeal, is whether the evidence is sufficient to support a finding that there was a defect in the construction of the ladder which caused plaintiff's fall. This fact issue was required to be resolved in plaintiff's favor before

defendants could be held liable for alleged negligence in furnishing unsafe equipment.

We perceive no conflicts in the testimony pertinent to this issue. The dispute concerns the inferences that may reasonably be drawn from the facts established by the testimony and an examination of the ladder.[1]

Plaintiff, a 37-year-old, 210-pound, 6-foot journeyman mason and carpenter, entered into an oral agreement with defendants, a salesman and his wife, to construct a fireplace in a partially completed dwelling house owned by them. The agreement called for defendants to furnish and pay for all materials and helpers needed and to pay plaintiff on an hourly rather than a contract basis for all work performed by him. Defendants employed two laborers to assist plaintiff, and before he began to work they removed an old chimney, which plaintiff had advised was necessary. In performing this work, the laborers used two ladders which they found in what is referred to as a "scrap pile" of lumber situated on the premises of defendants. Although defendants were unaware of the existence of the ladders, they admitted ownership of them.

When plaintiff arrived to begin work, he and the helpers continued to use the ladders in the position in which they had been placed by the laborers. One extended from the ground to the roof of an attached garage; the other, from which plaintiff subsequently fell, extended from the roof of the garage to the edge of the roof of the house, a distance of about 6 feet. The uprights of the upper ladder straddled the ridgepoles of the slightly sloping hip roofs of both the house and the garage. Both ladders were constructed of wood. The ladder involved in this action, referred to as "homemade," is 7 feet 5/8 inch in length and consists of 5 crosspieces or rungs which are fastened to the uprights by nails driven through each end into the uprights. Both the uprights and crosspieces were pine lumber, and the crosspieces were

---

[1]Issues concerning whether plaintiff was an employee or independent contractor, assumption of risk, and contributory negligence were also submitted to the jury. Determination of these issues also largely depended upon the inferences to be drawn from the testimony.

about 4 inches wide and 1 inch in thickness. The top rung was 9¾ inches from the top of the uprights, and the spaces between the rungs varied from about 11 to 12 inches. These two ladders were the only means by which plaintiff and the laborers could ascend from the ground to the fireplace chimney extending above and at the edge of the house roof opposite the upper ladder. Before plaintiff used the lower ladder, he inspected it and found it in "awful bad shape," one side of the upright being "cracked." He ordered it repaired by one of the laborers. Similarly, before he used the upper ladder he inspected it. He testified as follows:

"The second ladder looked like a very good ladder; I checked it when I went up; I didn't take a hammer and tear it apart, but I did check it, and to the best of my memory, it was a very good ladder. It was a homemade ladder, but it was strong."

He further stated that the wood contained no knots or cross grain, and from his extensive experience with ladders, it was his judgment that it was "satisfactory" and he thought it "safe." He estimated that he must have used the ladder 4 or 5 times a day during the period of 10 days while he was engaged in working on the roof. The two helpers used it considerably more, probably a thousand times prior to the time of the accident. When the ladder was in place, it extended "very little" above the roof of the house. Plaintiff testified that he could step upon the roof without using the top rung but he could not remember whether he customarily did so, and there is no testimony concerning the practice in this respect by the laborers, only one of whom testified.

The ladder was introduced in evidence and made available for inspection by this court. Except for the absence of the top rung (which was replaced by a two-by-four slightly below where the original rung was secured), and the absence of an irregularly shaped splinter of the wood from the inside edge of the left upright about a foot from the top and about 2 inches wide and almost half the thickness of the upright, the ladder is in the same condition as it was before the accident. Each rung is secured to each upright by three nails. The uprights contain quite a number of "nail holes," especially in the area of the top rung,

indicating that the lumber was not new lumber when the ladder was made. One nail imprint, referred to as a "half-nail-hole," slanted from the front edge of the upright across the splintered surface of the upright. This, plaintiff claims, indicates that one nail which secured the top rung to the upright protruded through the inside surface of the upright behind the rung and therefore was not visible to the plaintiff upon his inspection of the exposed surfaces while the ladder was in use.

The accident occurred when plaintiff started up to the roof of the house, carrying 6 steel enforcing rods of undisclosed weight, varying in size from 18 inches to 4 feet. The rods were not tied together and were carried loose under his arm. When he stepped on the top rung and was about to step on the roof, the left side of the rung broke loose and the upright to which it was attached "splintered off." He fell to the roof of the garage, severely injuring himself. Plaintiff further stated that when he was climbing the ladder he did not see anything wrong with the rung then or previously, and he could not account for the fact that the ladder failed. He testified:

"Q. Didn't you see anything wrong with the top rung at that time?

"A. If I had seen anything wrong with it, I wouldn't have stepped on it.

"Q. How do you account for the fact that it failed then?

"A. That I cannot account for then.

"Q. Was it wear and tear on the ladder?

"A. That I couldn't say either.

"Q. And, was your opinion as a carpenter, as a journeyman carpenter, is that it failed because of the wear and tear that this ladder was subjected to?

"A. That I couldn't say, sir.

"Q. It could be that?

"A. Could be many things, I don't know.

"Q. Why?

"A. I don't know why it broke; it just broke under my weight is all I know."

Mrs. Alexander was at home during the course of the work and

when plaintiff fell, but her husband, away on "selling trips," observed plaintiff working only on "several" weekends. Both defendants admitted that they had never inspected the ladder prior to use, being unaware that the ladders were obtained from the lumber pile until after the accident.

In resolving the issue presented, the trial court assumed, without deciding, that the evidence was sufficient to sustain findings that plaintiff was an employee and that defendants had a duty to inspect the ladder.

Plaintiff rests his claim that the court erred in ordering judgment for defendants upon the argument that drawing all inferences from the evidence most favorably to him, and essentially from the ladder itself, the jury could find that the ladder was defective when constructed because (a) the left side of the top rung broke or collapsed; (b) this happened when plaintiff stepped on it for the first time; (c) the rung was improperly attached to the left upright, one of the nails being driven into the upright at an angle protruding through to the inside surface behind the rung, thereby causing part of it to splinter off when plaintiff stepped on it; (d) the defect did not result from the wear and tear of ordinary use; and (e) it was not apparent to plaintiff as he inspected only the exposed surfaces as it stood in place, but the "protruding nail, and quite probably the beginnings of the crack or splinter," would have been readily observable to defendants had they inspected it prior to plaintiff's use.

In a comprehensive memorandum painstakingly analyzing plaintiff's contentions, the court, we believe, correctly concluded that the inferences urged are speculative since they cannot reasonably be drawn from the established facts and are "contrary to the uncontradicted testimony of the plaintiff." As the court pointed out, no testimony even remotely suggests that the top rung failed because it was improperly nailed to the upright; further, that plaintiff, who was best qualified to know and who inspected the ladder before and during use and at trial, repeatedly disclaimed any knowledge of the cause of the failure, declaring only that "it just broke under my weight"; that the inferences that plaintiff's inspection was limited to the exposed surfaces

and that the rung broke when used for the first time cannot fairly be drawn from the testimony and directly conflict with the more likely implications of the testimony concerning the use of the ladder and plaintiff's inspection. The court concluded that the evidence was insufficient to establish the defect claimed or any definite cause for the ladder's collapse. We reach the same conclusion.

The mere fact that an accident happened and plaintiff was injured does not alone supply a reasonable basis to support either a conclusion that the ladder was defective or that defendants were negligent.[2]

The admitted failure to inspect the ladder before furnishing it to plaintiff can have no significance as a cause of the accident where it has not been shown that the ladder was defective. Neither is the fact that one nail securing the top rung was angled into one upright a sufficient basis to support a conclusion that it caused the rung to collapse, where the ladder had been extensively used without incident up to the time of the accident and no one using it had any reason to suspect a weakness in any part of the ladder or that it was unsafe for the purpose. Plaintiff's claim that his fall was due to a defect in the construction of the top rung and not otherwise necessarily makes proof of that claim a prerequisite to a finding that defendants were negligent in either furnishing an unsafe ladder or in failing to inspect or discover a defect in construction, or both. It is true, as plaintiff argues, that the evidence need only show that it was more likely than not that the defect claimed caused his fall[3] and that proof thereof may be based upon circumstantial evidence sufficient to provide a reasonable basis for diverse inferences.[4] However, where the evidence suggests other causes involving no breach of duty and the probabilities are equal that the accident may have resulted from a cause different from that alleged, a finding that the alleged cause is established rests upon conjecture and cannot be upheld.[5]

---

[2]13B Dunnell, Dig. (3 ed.) § 7047.

[3]Lindgren v. Voge, 260 Minn. 262, 109 N. W. (2d) 754, 88 A. L. R. (2d) 1080.

[4]Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121.

[5]Muggenburg v. Fink, 166 Minn. 411, 208 N. W. 134; Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243.

From an inspection of the ladder alone, with its many signs of withdrawn nails in other areas of the wood as well as the weight and quality of the lumber from which it was constructed, we cannot agree that a reasonable basis for the inferences urged by plaintiff exists. When the ladder is examined in the light of the testimony as a whole, it clearly appears that it is equally as probable that the top rung of the ladder collapsed and plaintiff fell because it was not strong enough to support the weight of plaintiff and his load or due to a weakening developed from the wear and tear of prior use as it is that it collapsed because of a defect in construction of the top rung.

It is fundamental that negligence to be actionable must be causal. Plaintiff's claims that defendants were negligent in furnishing an unsafe ladder and in failing to inspect it prior to use have no causal relation to his fall without indulging in speculation and conjecture that the ladder collapsed because of a defect in construction.

In view of the foregoing, no useful purpose would be served in discussing the application of the so-called simple tool doctrine or other contentions urged by defendants in support of upholding the order of the trial court. However, it may be desirable to note that if plaintiff's fall was caused by defects in the ladder which developed during its use, the parties are agreed that under the simple tool doctrine defendants could not be held liable since thereunder an employer has no duty to inspect and discover defects which arise in the ordinary use of simple tools such as a ladder.[6]

Affirmed.

---

[6]Mozey v. Erickson, 182 Minn. 419, 234 N. W. 687; Person v. Okes, 224 Minn. 541, 29 N. W. (2d) 360; Anderson v. Fred Johnson Co. 116 Minn. 56, 133 N. W. 85; Dessecker v. Phoenix Mills Co. 98 Minn. 439, 108 N. W. 516. Cf. Cayse v. Foley Brothers, Inc. 255 Minn. 176, 96 N. W. (2d) 238.