Mark WEBER, Appellant,

v.

Ralph TUCK, Ronald P. Meiners, Respondents.

No. C5–00–1097.

Court of Appeals of Minnesota.

Dec. 26, 2000.

Francis (Frank) M. Doherty, Michael W. Gill, Hale, Skemp, Hanson, Skemp & Sleik, La Crosse, WI, for appellant.

Ken D. Schueler, Dunlap & Seeger, P.A., Rochester, for respondent Tuck.

Robert G. Benner, Goodman, Guzinski & Benner, P.A., Rochester, for respondent Meiners.

Considered and decided by SCHUMACHER, Presiding Judge, AMUNDSON, Judge, and HALBROOKS, Judge.

## OPINION

SCHUMACHER, Judge.

Appellant Mark Weber appeals the district court's grant of summary judgment to respondents Ralph Tuck and Ronald P. Meiners. We affirm.

## FACTS

Tuck and Meiners jointly owned a parcel of real estate. Tuck offered Weber $6 per hour to help Tuck and Meiners work on the property. Weber accepted the offer. The next day, Meiners instructed Weber to get a ladder and climb to the roof of a building on the property to change a skylight. There was only one ladder tall enough for the task. Meiners told Weber to set the ladder up on a cement pad. Weber did so, and climbed the ladder. Just as he reached the top, the bottom of the ladder slid out from under him. Weber fell and was injured.

The ladder Weber used was the 16 foot tall bottom half of a two-piece aluminum extension ladder. Meiners had borrowed the ladder from a friend, taking only the bottom half. The ladder did not have rubber stops or shoes. Neither Tuck nor Meiners knew that the ladder lacked rubber stops or shoes. An expert retained by Weber opined that there had apparently once been non-slip pads on the ladder's feet, but that they had worn off through wear and tear. The expert opined that in the condition it was in on the day of the accident, the ladder was unreasonably dangerous for its intended use.

Weber sued Tuck and Meiners for negligence. Meiners moved for summary judgment, and Tuck joined the motion. The district court granted the motion, ruling that the simple tool doctrine barred Weber's claim.

## ISSUE

Does the "simple tool doctrine" bar Weber's claim?

## ANALYSIS

■ On an appeal from summary judgment, the reviewing court asks whether there are any genuine issues of material fact in dispute and whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We review de novo the district court's interpretation of the law, *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990), including whether a duty is owed. *Zimmer v. Carlton County Co-op. Power Ass'n*, 483 N.W.2d 511, 513 (Minn.App.1992), *review denied* (Minn. June 10, 1992). We view the evidence in the light most favorable to the party against whom summary judgment was granted and accept as true that party's factual allegations. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Summary judgment on a claim is mandatory against a party with the burden of proof who fails to establish an essential element of his claim because that failure renders all other facts immaterial. *Lloyd v. In Home Health, Inc.*, 523 N.W.2d 2, 3 (Minn.App. 1994).

On appeal, Weber argues that the district court erred in granting summary judgment for Tuck and Meiners on the basis of the simple tool doctrine, "under which there is no duty on the part of the master to inspect and to discover defects, if any, in simple tools and instrumentalities the use of which is attended ordinarily with no danger and to warn the servant thereof." *Person v. Okes*, 224 Minn. 541, 543, 29 N.W.2d 360, 362 (1947). The supreme court has explained that "the relaxation of the master's duty and liability rests on the assumed equality of knowledge and ability to discover the defect complained of." *Id.* (citation and quotation omitted). There is *no* dispute that the 16 foot ladder involved in this case is a simple tool. *See Dessecker v. Phoenix Mills Co.*,

98 Minn. 439, 440, 108 N.W. 516, 517 (1906) (12 foot ladder held simple tool).

Weber argues that the district court neglected to take proper account of two supreme court cases arising from the same lawsuit, *Cayse v. Foley Bros., Inc.*, 255 Minn. 176, 96 N.W.2d 238 (1959) (*Cayse I* ), and *Cayse v. Foley Bros., Inc.*, 260 Minn. 248, 110 N.W.2d 201 (1961) (*Cayse II* ), which provide that the " 'simple tool' doctrine, while it relieves the employer of the duty to inspect and discover defects which arise in the ordinary use of an instrumentality, does not relieve him of the obligation to furnish tools which are initially fit for the uses to which they may be put." *Cayse I*, 255 Minn. at 182, 96 N.W.2d at 242. Weber argues that Tuck and Meiners had the obligation to provide him a ladder that was "initially fit" for the use for which it was to be put, and since the ladder they provided had no rubber shoes or stops and was unreasonably unsafe according to Weber's expert, Tuck and Meiners did not meet that obligation. For that reason, Weber argues, the simple tool doctrine does not apply.

Tuck and Meiners argue that the statement from *Cayse I* is dictum and therefore not an actual requirement of the simple tool doctrine. The argument has merit; as Tuck points out, *Cayse I* was decided on a question of statutory interpretation and *Cayse II* on the question of contributory negligence. Neither case decided that the simple tool doctrine did or did not apply. *See Cayse I*, 255 Minn. at 181–82, 96 N.W.2d at 242–43; *Cayse II*, 260 Minn. at 254, 110 N.W.2d at 205. Nonetheless, in *Cayse II*, the supreme court wrote that "we have *held* that the simple tool doctrine has no application to the furnishing of tools suitable for the use for which they are to be used," citing the decision in *Cayse I*. *Cayse II*, 260 Minn. at 254 & n. 3, 110 N.W.2d at 205 & n. 3 (emphasis added). Because the supreme court said its statement in *Cayse I* was a holding, we consider it one.

■ Assuming then that the " 'simple tool' doctrine * * * does not relieve [an employer] of the obligation to furnish tools which are initially fit for the uses to which they may be put," *Cayse I,* 255 Minn. at 182, 96 N.W.2d at 242, the question is whether the ladder in this case was "initially fit" for the use to which it was to be put. Weber argues that because there were no rubber shoes on the ladder when it was provided to him, the ladder was not "initially fit" for the use to which it was to be put.

Tuck and Meiners, however, argue that Weber's interpretation of the "initially fit" requirement is incorrect. They cite *Dally v.. Ward,* 223 Minn. 265, 26 N.W.2d 217 (1947), as an illustration of the proper application of the rule. The facts in that case are as follows:

> [The injured plaintiff] was engaged in attaching an hydraulic hoist to a farm truck. In the process of this work it became necessary to insert a steel shaft through four bearings or boxes in order to attach the hoist to the frame of the truck. There was no difficulty in inserting the shaft through the first three of these bearings, but when the end of the shaft reached the fourth box there was difficulty in driving it through that box. It became necessary to drive or pound the other end of the shaft to complete the process of forcing it through the fourth box. One of the defendants had been engaged in tapping or pounding upon the shaft with an ordinary two-pound hammer in order to drive it through this fourth box. After becoming somewhat fatigued, he asked plaintiff to continue the process. Shortly after plaintiff started to tap or pound the end of the shaft, a chip of steel flew off the hammer and struck plaintiff in the eye. As a result, he lost the eye.

*Id.* at 266, 26 N.W.2d at 218. The supreme court held that the simple tool doctrine barred the employee's claim. *Id.* at 267, 26 N.W.2d at 218.

Tuck and Meiners argue that "[o]bviously, the hammer in the *Dally* case was not fit for the use to which it was put, otherwise the chip of steel would not have struck the plaintiff in the eye." It follows from *Dally,* they argue, that even if a simple tool must be "initially fit" for the use to which it is to be put, that does not mean it must be fit for such use every time it is provided to an employee to use.

■ Indeed, adopting Weber's interpretation of the simple tool doctrine would rob the doctrine of most, if not all, of its content. The simple tool doctrine "relieves the employer of the duty to inspect and discover defects which arise in the ordinary use of an instrumentality." *Cayse I,* 255 Minn. at 182, 96 N.W.2d at 242. If the duty to provide an employee with a tool "initially fit" for the use to which it was to be put applied every time the tool were given to an employee, it would as a practical matter impose on the employer the very duty to inspect that the simple tool doctrine is designed to prevent.

■ We can glean further insight into the meaning of the "initially fit" requirement from the circumstances of the case in which the language was used. In *Cayse I,* the wooden ladder from which the plaintiff fell had been built in the defendant's own carpentry shop and had been equipped with neither rubber shoes nor safety hooks. *Cayse I,* 255 Minn. at 178, 96 N.W.2d at 240. From the very start of the existence of the ladder, therefore, it was arguably not fit for the use to which it was to be put; in other words, it was not "initially fit" for such a use. We hold that the *Cayse I* requirement that a simple tool be "initially fit" for the use to which it is to be put applies to the time when a tool is manufactured.

In this case, Weber's own expert testified that the ladder had once had non-slip pads on its feet, but that those pads had worn off "due to wear and tear on the ladder." Unlike the ladder in *Cayse I,* the ladder in this case was arguably "initially

fit" for the purpose to which it was to be put. Its defect, the absence of rubber pads or stops on the feet, arose in the ordinary use of the tool and would have been as obvious to Weber as to Tuck and Meiners. Weber testified that he examined the ladder from top to bottom before using it, nothing obstructed his ability to inspect the ladder, and the "visibility was fine." Under these circumstances, the rationale underlying the simple tool doctrine suggests that the doctrine should bar Weber's claim. The district court therefore did not err by ruling that the simple tool doctrine bars Weber's claim.

We question, however, whether Minnesota law should continue to recognize the simple tool doctrine. As noted above, the simple tool doctrine is based on "the assumed equality of knowledge and ability to discover the defect complained of." *Person*, 224 Minn. at 543, 29 N.W.2d at 362 (citation and quotation omitted). In similar circumstances, however, the Minnesota Supreme Court has rejected a rule of law that places the risk of obvious dangers solely on the user of the dangerous item.

In *Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 210 (Minn.1982), a case involving an "aerial ladder," the supreme court addressed the "latent-patent danger rule which relieves a manufacturer from liability if the dangers of his product are obvious to the user." Noting that Minnesota law requires an analysis of comparative fault, the supreme court rejected the latent-patent danger rule:

> The latent-patent defect rule makes obviousness a complete bar to recovery. It circumvents [the comparative fault statute] and swallows up the assumption of the risk defense. This result is contrary to the public policy of apportioning loss between blameworthy plaintiffs and defendants.

*Id.* at 213.

The simple tool doctrine suffers from the same flaws, placing the risk of a dangerous simple tool entirely on the employee using the tool and ignoring, in violation of comparative fault principles, the relative fault of the employer that provided the tool. If an employer provides a dangerous simple tool and an employee uses it, we see no sound reason why standard comparative fault principles should not be applied to determine the relative degrees of fault and apportion the loss accordingly. Furthermore, since the rule applies only in employer-employee situations, where most lawsuits for negligence will be barred by the workers' compensation statutes, we do not foresee a flood of litigation by abandoning the simple tool doctrine and allowing a potential remedy in the few situations where the workers' compensation statutes do not apply.

This court, however, does not have the authority to make that decision. Though perhaps anachronistic, the simple tool doctrine has not been expressly rejected by either the legislature or the supreme court. Furthermore, as the district court held, it applies in this situation. We therefore must decide this case in accordance with the doctrine.

### DECISION

The district court did not err by granting summary judgment to Tuck and Meiners.

**Affirmed.**